## THE PEOPLE, *ex rel.* Walker and others, *vs.* THE BOARD OF GOVERNORS OF THE ALBANY HOSPITAL.

Where an election of governors of a hospital is required by its by-laws, to be held on a specified day in every year, and the officers of the corporation neglect, for several years, to hold an election, a *mandamus* will be issued, on the application of members of the corporation, to compel the defendants to hold an election for governers, within 60 days from the day fixed in the by-laws for elections, in accordance with the statute, (1 *R. S.* 604, § 8;) and this without proof of any demand that an election be held.

A neglect to hold an election, for 8 or 10 years, cannot be accidental; and when so long continued, and occurring in so many instances, is equivalent to a refusal.

When the officers of a corporation have a duty to perform on a certain day, by holding an election, they are bound to perform it, without request.

The right of members of a corporation to have an election of officers held, does not depend upon the number of votes they can cast.

It is no answer to the application for a mandamus, in such a case, that since the papers were served the defendants have ordered an election; where it appears that they have attempted, by altering the by-laws, to change the mode of publishing the notice of the annual election; to change the test of the right to vote at such election; and to give persons a right to vote who had not that right, previously.

*It seems* the right of the members of a corporation to have an election for officers, within 60 days of the annual election day, cannot be taken away by a by-law.

THE relators applied for a peremptory mandamus against the board of governors of the Albany Hospital, to wit: Thomas W. Olcott, Archibald McClure, and others, requiring them to notify and cause an election to be held

for fifteen governors of said hospital within sixty days immediately after the first Monday of August, 1871, as, and in the manner prescribed by law; also commanding and requiring the said board of governors, more than ten days previously, to fix and appoint a place in the city of Albany where, and a time within sixty days after the said first Monday of August, 1871, when, the members of said Albany Hospital might, at a meeting thereof, elect from their own number, by ballot, and by a majority of the votes given, fifteen persons as governors of said hospital. Also that Stephen Groesbeck, as secretary, give notice of the time and place of such election, in three of the daily newspapers published in Albany, for more than ten days. Also that Thomas W. Olcott, president of said Albany Hospital, and of the board of governors thereof, or Archibald McClure, vice president thereof, in case of his absence, within five days from the service of said mandamus, call a meeting thereof, for the purpose aforesaid, appointing the time and place of such meeting, giving at least one day's notice thereof in writing, specifying the business to be transacted thereat, as aforesaid, through the post office. Also that the said secretary, Groesbeck, on the day preceding such meeting, send notice of the time and place thereof, specifying the business to be transacted thereat, to each of the governors of said hospital, through the post office.

It appeared, from the moving papers, that the hospital was chartered by chapter 431 of the laws of 1849, commenced the transaction of the business authorized thereby within one year, and now owns real and personal property worth many thousand dollars. That the board of governors of said corporation, after such organization, had, before the year 1852, made certain by-laws relative to the management and disposition of the estate and concerns of the said corporation, to the admission of members, and designating directors, and appointing the time, but not

The People *v.* Board of Governors of Albany Hospital.

the place, for the annual meeting of the members of said corporation, for the election of governors thereof, as directed and authorized by said act; which said by-laws have not been repealed, or modified, but are still in full force. That by said by-laws persons contributing $50 became members for two years, and entitled to a ticket admitting a patient each year. The payment of larger sums made the donor a member for a longer period. By chapter 2 of the by-laws it was provided, that " on the first Monday of August, 1852, and on the same day in each succeeding year, between the hours of ten in the forenoon and one in the afternoon, an election shall be held in such place in the city of Albany, as the board of governors shall have appointed, for fifteen governors of the Albany Hospital, to hold their offices for one year, and until others shall be elected in their places. Notice of the time and place of every such annual election shall be given by the secretary, in three of the daily newspapers published in the said city, for ten days. Every member who has contributed $50, or more, by paying, or securing the same by his obligation, which has been accepted, shall be entitled to one vote for each sum of $50 so contributed. Members not in the city of Albany at the time of an election may vote by proxy duly constituted in writing." And it was further provided that the board of governors might fill vacancies in the office of governors, by appointment, and might choose a president, vice president, secretary and treasurer.

By chapter 3 of the by-laws it was provided, that " the president may call a meeting of the governors whenever he shall think necessary, and may appoint the time and place of such meeting, giving at least one day's notice thereof, through the post office." Also that " when the office of president shall be vacant, or when the president shall be absent, the vice president shall succeed to all his rights and duties."

By chapter 6 of the by-laws, defining the duties of the secretary, it was, among other things, provided, that " on the day preceding every meeting, stated or special, he shall send notice of the time and place of such meeting to each of the governors, through the post office."

The moving papers further showed that each of the relators had subscribed, contributed and paid to the treasurer of said hospital a sum named, to become a member thereof, and thereby became, and was a member, and entitled to the rights and privileges of a member." That no annual, or other meeting of the members of said corporation, for the election of governors thereof, has been held within eight or ten years, nor have any governors of said corporation been, at any time, or in any manner, elected since that time; but that as vacancies in the office of governor, or in the board of governors thereof have occurred for the past eight or ten years, the remaining members of said board of governors have from time to time supplied and filled such vacancies in the manner provided for by said by-laws; that the governors elected and so appointed have, in consequence. of, and pursuant to, the charter and by-laws of said corporation, held over and continued in office as such, because of a failure to elect their successors. That the following persons are now governors of said corporation," (giving their names.) "That George H. Thacher is the mayor of the city of Albany, and Simon W. Rosendale the recorder thereof. That Thomas W. Olcott is the president, Archibald McClure is the vice president, Stephen Groesbeck is the secretary, and Visscher Ten Eyck is the treasurer of said corporation, or the board of governors thereof, and chosen by the governors of said corporation, as provided by the said by-laws thereof. That no annual, or other election for fifteen, or any, governors of said Albany Hospital was held on the first Monday of August, 1871. That the

The People *v.* Board of Governors of Albany Hospital.

board of governors of said Albany Hospital did not, at any time prior to said first Monday of August, 1871, designate a place in the city of Albany, where an election for fifteen, or any, governors of said Albany Hospital would be held on said first Monday of August, 1871; nor designate any time during said day, between ten in the forenoon and one in the afternoon, when such election should be held, as deponent is informed and believes; nor was any notice of the time, or place, of any such election given by the secretary in three, or any, of the daily papers published in said city, for ten days prior to said first Manday of August, 1871, or for any time prior thereto.

That the election for governors of said Albany Hospital was not duly, or in any manner, held on the day designated and appointed by the act incorporating the same, and the by-laws passed pursuant thereto, to wit, the first Monday of August, 1871."

The deponents prayed that the president and governors of said Albany Hospital notify and cause an election for governors thereof, within sixty days immediately after said first Monday of August, 1871, in the manner provided by law, and according to the provisions of the charter and by-laws of said Albany Hospital.

On the hearing of the motion, the defendants read an affidavit stating that " although no election has been held for governors of said Albany Hospital for several years last past, such failure so to hold an election was not from any willful intent, nor for the purpose of preventing the members thereof from participating in an election for governors of said hospital; that no request has ever been made to this deponent, to his knowledge, recollection or belief, nor to said board of governors, to the knowledge of this deponent, for the holding of an election of governors, by any member of said corporation, until the commencement of the present proceedings. That the time originally

designated in the by-laws of said corporation for holding an annual election was the first Monday of August; that such time, so designated, was at a season of the year when many of the governors of said corporation, and also very many of the members of said corporation were usually absent from the city upon their ordinary summer vacation, and was not a favorable time for holding an election; and that no demand or request for an election having been made, and the affairs of said corporation being in prosperous condition, no election was held; but this deponent expressly denies that such failure to hold an election was from any corrupt or improper motive on the part either of this deponent or the said board of governors.

That at a regular meeting of the board of governors, duly convened in said hospital building, pursuant to notice, on August 26, 1871, it was deemed expedient, by a majority of said board of governors being there present and voting therefor, to amend the by-laws of said corporation by appointing and designating the first Monday of October then next, and in each year thereafter, as the time for holding such election. That said by-law was so amended, and the last mentioned day duly designated and appointed as the day for holding such annual election. And it was further resolved, at said meeting, by said board of governors, that an election for governors be held on that day, in pursuance of said resolution and amendment, and that notice of such intended election was published in the journals of the city of Albany." The counsel for the relators claimed that the meeting was not "duly" called, and that the by-laws were not "duly" or "legally" amended; and on their application, the court ordered the motion to stand over two days, to enable them to serve an affidavit showing what they claimed to be the facts. They served an affidavit showing that the meeting was called by the secretary serving the following notice:

"ALBANY HOSPITAL.

A meeting of the governors of the Albany Hospital will be held *this day*, at 12 o'clock at noon, at the governors' room in the hospital.

S. GROESBECK, Sec'y of the governors.

Albany, August 26, 1871."

That no notice of the alleged meeting of the governors or board of governors was given to, or in any manner served upon, any of said governors, except the above. That but eight of the governors of said Albany Hospital attended the said meeting; and that the following amendment to the by-laws of said Albany Hospital was claimed to have been passed thereat:

*" Resolved*, that section 1, chapter 2, of the by-laws, rules and regulations of the Albany Hospital be amended so as to read as follows: ' On the *first Monday of October*, 1871, and on the same day in each succeeding year, between the hours of eleven o'clock A. M. and one o'clock in the afternoon, at the hospital building in the city of Albany, an election shall be held for fifteen governors, to hold their offices for one year and until others shall be elected in their places. Notice of the time and place of every such election shall be given by the secretary in *two* daily newspapers published in the city of Albany, for ten days. Every member who has contributed fifty dollars or more, either in money, *building materials*, or *hospital supplies*, shall be entitled to one vote for each sum of fifty dollars so contributed; but no vote shall be received at the next election on account of any sum contributed *after the adoption of this amended section, or within thirty days next preceding any subsequent election.* Members not in the city of Albany at the time of an election may vote by proxy duly constituted in writing.' "

That no notice of an election for the board of governors of said Albany Hospital had been published or given, ex-

cept a copy of said alleged amended by-law, with a notice thereunder, as follows:

"*Notice.* An election for fifteen governors of the Albany Hospital will be held at the hospital building in the city of Albany, on the first Monday of October, 1871, between the hours of eleven o'clock A. M. and one o'clock in the afternoon, in pursuance of the above resolution and amendment.     By order of the board,

STEPHEN GROESBECK, Secretary.

Albany, August 26, 1871."

In answer to this affidavit, the defendants read an affidavit of the secretary, stating that he, in fact, properly served the notice for the meeting of the board of governors on the 26th of August, on the 25th.

*N. C. Moak* and *Henry Smith,* for the relators.

*E. J. Meegan,* (city attorney,) for the mayor and recorder of Albany, governors *ex officio.*

*S. O. Shepard,* for the other defendants.

LEARNED, J.   This is a motion for a mandamus to compel an election for governors of the Albany Hospital. The institution was incorporated in 1849, and by the act of incorporation the members, at any annual meeting to be held at such time and place as the by-laws shall appoint, are to elect fifteen persons as governors.  These persons, with the mayor and recorder of the city of Albany, *ex officio,* are to constitute the board of governors, and are to hold office for one year, and until others are elected in their places.  According to the by-laws passed in 1852, and as they existed on the 11th of August, 1871, when these proceedings were commenced, the election of governors was to be held on the first Monday of August, in

every year. But in fact no election had been held for eight or ten years, and nõne was had on the first Monday of August, 1871. The relators are members of the corporation, and would have been entitled to vote at an election, if held, on the day last mentioned. They now ask the court to require an election to be held within sixty days from the first Monday of August last, in accordance with 1 *R. S.* 604, § 8.

It was not disputed, on the argument, that a mandamus would lie to compel an election of the officers of a corporation, other than municipal, if a proper case were made. (*Ang. & Ames on Corp.* § 700 *et seq.*)

On the part of the defendants, it was urged that a mandamus was a prerogative writ issuing in the discretion of the court. That discretion, however, is, of course, a *legal* discretion. If the relator can obtain relief in other ways; if his right is questionable; if there be no necessity for the writ; in such cases as these, the writ will not issue,

But when it is said that a remedy is in the discretion of the court, it is not meant that the court may *arbitrarily* refuse it. And even if the court should in any case be aware that the controversy before it is one which has excited much feeling, and in respect to which it is unpleasant to decide, still the court ought not to decline to act, on the excuse that the remedy asked for is discretionary.

In the present case, the relators' right to vote is not denied; and there is no other form of remedy of which I am aware. The question then must be, have they shown a necessity for the writ, and entitled themselves to it. The defendants insist that a mandamus should not issue, unless a demand has been made, for the specific thing, the performance of which is the object of the mandamus, and unless there has been a refusal, or conduct equivalent. As authority for this, they cite *Rex* v. *Brecknock &c. Canal Co.,* (3 *Ad. & E.* 217, 221.) In that case, certain owners of land might call on the canal company to execute cer-

tain works. If the company refused, for six months, the owners might construct them. The relators called on the company, and the company said they would execute the works. They delayed; and on remonstrance, said they would proceed if indemnified. On motion for a mandamus to compel them to execute the works, it was held that after the company's consent, there had been no direct refusal. The statement of this case shows that it is not analogous to the present. Negotiations had passed between the parties, and it did not appear that the company were not intending to execute the works. They hesitated only because they asked to be indemnified, and the relators had not distinctly refused to indemnify. The case of *Reg.* v. *Bristol and Exeter R. R. Co.*, (7 *Jur.* 233,) is similar in character to the last. But in the present case, the defendants had a duty to perform on a certain day. It certainly cannot be necessary for the members of a corporation to request the directors to hold an election. Their duty is to hold it, without request.

If, indeed, it had appeared in this case, by the opposing affidavits, that the omission to hold an election was only accidental—an omission which had never occurred before— then it might have been urged with much force, by the defendants, that their attention should have been called to their neglect, so that they might remedy it voluntarily. But the opposing affidavits give as reasons for not holding the election that the first Monday of August was not a favorable time, and that the affairs of the corporation were in a prosperous condition.

It is therefore apparent from the affidavits of the defendants that the neglect to hold an election was not accidental. Indeed a neglect for eight or ten years could hardly be accidental, although it may not have been from any corrupt or improper motive. A neglect so long continued, and occurring in so many instances, is equivalent to a refusal.

It was further urged that the relators had only two or three votes. But of course, the right of the relators to have an election ordered does not depend on the number of votes they can cast. The member of a corporation who has only one vote has a right to cast that vote; and the officers of the corporation have no right to prevent him.

Whether others are or are not satisfied with the management of the corporation does not appear, and is entirely immaterial. This is not a question as to the manner in which the governors have managed the affairs of the hospital. Its decision does not touch that point, in the least. It is only a question whether the members of the corporation shall choose the governors, as the law says that they shall.

The remaining objection taken by the defendants is, that since the service of the papers, they have ordered an election, and that therefore the mandamus is unnecessary. If, on the service of the papers for this motion, the defendants had simply given a regular notice for an election, I think there would have been good reason, at least, for suspending the decision, in this case. But more than this has been done. By the by-laws, as they existed on the first Monday of August, 1871, it is declared that every member who has contributed $50 or more, by paying or securing the same, shall be entitled to one vote for each sum of $50. On the 26th of August, a meeting of the governors was held, at which eight were present. At that meeting the by-law was amended by changing the day of the annual election from the first Monday of August to the first Monday of October, and it was declared that every member who had contributed $50 or more, either in money, building materials, or hospital supplies, should be entitled to one vote for each sum of $50; and the notice of election published, is stated to be in pursuance of this resolution and amendment. The mode of publishing a notice of the annual election is also changed, by this amendment to the by-laws, from three

newspapers to two. By the statute, (1 *R. S.* 604, § 8,) when an election is not held at the regular day, it is to be held in sixty days thereafter; and the persons who are to vote are those who are entitled to vote at the annual election. If, therefore, this amendment of the by-law is valid, it changes the test of the right to vote at the election; and gives persons a right to vote who had not that right on the first ·Monday of August. There may be great doubt whether this·can be done. Besides, by 1 *R. S.* 603, · § 8, no amendment to a by-law relative to an election is. valid until it has been published two weeks, thirty days before the election. And it would seem that this by-law cannot have been published, according to that statute, the proper length of time prior to the appointed day.

It is also questionable whether the right to an election within sixty days of the annual day can thus be taken away by a by-law. For, if this by-law is valid, it is plainly in the power of the governors, before the first Monday of October, to amend the by-law again; appointing another and more distant day for the annual election. Thus they would prevent an election from ever taking place.

It is insisted, also, by the relators, that the meeting of August 26 was irregularly called, for want of a specific notice of its object. With regard to this amendment to the by-law, it is not necessary here to decide. Enough appears to show that there is doubt about it. The only notice of election is of one in pursuance of this resolution and amendment. If the election is held under that notice, therefore, the inspectors and the voters may be concluded, and may be prevented from asserting that the only proper voters are those who might have voted on the first Monday of August. That notice of an election cannot, therefore, be considered a compliance with the duty imposed on the governors—that of giving notice of an election within sixty days after the day appointed for the annual election, in case that fails.

I see no reason, therefore, why the mandamus should not issue. The time when the election shall be held, within the sixty days, will be under the control of the governors; and the question of who shall vote, at the election, will remain for the future decision of the proper officers. Nothing that has been here said is intended to control or influence that question.

Nor is the awarding of this mandamus any indication that the management of the hospital has not been in the highest degree wise and judicious. No evidence was produced on that point, and none would have been proper. It is to be hoped that when the members of this corporation have had an opportunity to express their wishes, as to the persons who shall control, and when they have fairly done this, controversy as to this charity will be at an end.

[ALBANY SPECIAL TERM, September 26, 1871. *Learned*, Justice.]