In the Matter of JOSEPH L. AUER on His Own Behalf and on Behalf of All of Holders of Class A Stock of R. HOE & Co., INC., et al., Respondents, against ARTHUR DRESSEL, Individually and as President of R. Hoe & Co., Inc., et al., Appellants.

Argued February 25, 1954; decided March 12, 1954.

*Orison S. Marden, Neil P. Cullom, Thomas F. Peterson, John M. Johnston* and *Robert D. Cole* for appellants. I. The courts below erred in granting a peremptory order and thus denying appellants their statutory right of trial. (*Matter of Durr* v. *Paragon Trading Corp.,* 270 N. Y. 464; *Matter of Steinway,* 159 N. Y. 250; *Matter of Schulman* v. *Dejonge & Co.,* 270 App. Div. 147; *Matter of Coombs* v. *Edward,* 280 N. Y. 361; *People ex rel. Wood* v. *Board of Assessors of Brooklyn,* 137 N. Y. 201; *People ex rel. Durant Land Improvement Co.* v. *Jeroloman,* 139 N. Y. 14; *People* v. *National Park Bank,* 122 App. Div. 635.) II. The requests for the special meeting are revocable. (*Shauver* v. *Ewing,* 1 F. 2d 423, 267 U. S. 601.) III. Common stockholders have the right to vote; therefore petitioners have failed to present sufficient requests as matter of law. (*Matter of Silberkraus,* 250 N. Y. 242; *Lord* v. *Equitable Life Assur. Soc.,* 194 N. Y. 212; *Chriskal* v. *Petry,* 275 App. Div. 550, 301 N. Y. 562.) IV. In several respects, the meeting is not proposed " for a proper and lawful purpose "; consequently, the order should not

issue. (*Matter of Fierman* v. *Rose*, 175 Misc. 102; *Fox* v. *Cody*, 141 Misc. 552; *Abberger* v. *Kulp*, 156 Misc. 210; *Matter of Koch*, 257 N. Y. 318; *People ex rel. Manice* v. *Powell*, 201 N. Y. 194; *Oakes* v. *Cattaraugus Water Co.*, 143 N. Y. 430; *Twyeffort* v. *Unexcelled Mfg. Co.*, 263 N. Y. 6.) V. On the undisputed facts appellants' conduct, as a matter of law, did not constitute a refusal of petitioners' demand.

*Bruce A. Hecker, John R. Stevenson, John Kadel, Abraham Wilson* and *David M. Potts* for respondents. I. The record did not raise a triable issue of fact. (*Matter of Murphy* v. *Delaney*, 179 Misc. 436; *Matter of Koch*, 257 N. Y. 318; *Matter of Durr* v. *Paragon Trading Corp.*, 270 N. Y. 464.) II. The requests for the special meeting cannot be revoked after they have been filed. III. The common stockholders are not entitled to vote on any of the proposals. IV. The special meeting was requested for proper purposes. (*Fox* v. *Cody*, 141 Misc. 552; *Matter of Korff*, 198 App. Div. 553; *People ex rel. Manice* v. *Powell*, 201 N. Y. 194; *Abberger* v. *Kulp*, 156 Misc. 210.) V. Dressel failed and refused to call the requested meeting.

DESMOND, J. This article 78 of the Civil Practice Act proceeding was brought by class A stockholders of appellant R. Hoe & Co., Inc., for an order in the nature of mandamus to compel the president of Hoe to comply with a positive duty imposed on him by the corporation's by-laws. Section 2 of article I of those by-laws says that " It shall be the duty of the President to call a special meeting whenever requested in writing so to do, by stockholders owning a majority of the capital stock entitled to vote at such meeting ". On October 16, 1953, petitioners submitted to the president written requests for a special meeting of class A stockholders, which writings were signed in the names of the holders of record of slightly more than 55% of the class A stock. The president failed to call the meeting and, after waiting a week, the petitioners brought the present proceeding. The answer of the corporation and its president was not forthcoming until October 28, 1953, and it contained, in response to the petition's allegation that the demand was by more than a majority of class A stockholders, only a denial that the corporation and the president had any knowledge or information sufficient to form a belief as to the

stockholdings of those who had signed the requests. Since the president, when he filed that answer, had had before him for at least ten days the signed requests themselves, his denial that he had any information sufficient for a belief as to the adequacy of the number of signatures was obviously perfunctory and raised no issue whatever (see *People ex rel. Kelly* v. *Common Council,* 77 N. Y. 503, 511; *People ex rel. Fallert Brewing Co.* v. *Lyman,* 53 App. Div. 470, 474, affd. 168 N. Y. 669; *Matter of Guess,* 16 Misc. 306, 307). There was no discretion in this corporate officer as to whether or not to call a meeting when a demand therefor was put before him by owners of the required number of shares. The important right of stockholders to have such meetings called will be of little practical value if corporate management can ignore the requests, force the stockholders to commence legal proceedings, and then, by purely formal denials, put the stockholders to lengthy and expensive litigation, to establish facts as to stockholdings which are peculiarly within the knowledge of the corporate officers. In such a situation, Special Term did the correct thing in disposing of the matter summarily, as commanded by section 1295 of the Civil Practice Act (see Third Annual Report of N. Y. Judicial Council, 1937, pp. 186–188; *Matter of Ackerman* v. *Kern,* 256 App. Div. 626, 629, 630, affd. 281 N. Y. 87).

The petition was opposed on the further alleged ground that none of the four purposes for which petitioners wished the meeting called was a proper one for such a class A stockholders' meeting. Those four stated purposes were these: (A) to vote upon a resolution indorsing the administration of petitioner Joseph L. Auer, who had been removed as president by the directors, and demanding that he be reinstated as such president; (B) voting upon a proposal to amend the charter and by-laws to provide that vacancies on the board of directors, arising from the removal of a director by stockholders or by resignation of a director against whom charges have been preferred, may be filled, for the unexpired term, by the stockholders only of the class theretofore represented by the director so removed or so resigned; (C) voting upon a proposal that the stockholders hear certain charges preferred, in the requests, against four of the directors, determine whether the conduct

of such directors or any of them was inimical to the corporation and, if so, to vote upon their removal and vote for the election of their successors; and (D) voting upon a proposal to amend the by-laws so as to provide that half of the total number of directors in office and, in any event, not less than one third of the whole authorized number of directors constitute a quorum of the directors.

The Hoe certificate of incorporation provides for eleven directors, of whom the class A stockholders, more than a majority of whom join in this petition, elect nine and the common stockholders elect two. The obvious purpose of the meeting here sought to be called (aside from the indorsement and reinstatement of former president Auer) is to hear charges against four of the class A directors, to remove them if the charges be proven, to amend the by-laws so that the successor directors be elected by the class A stockholders, and further to amend the by-laws so that an effective quorum of directors will be made up of no fewer than half of the directors in office and no fewer than one third of the whole authorized number of directors. No reason appears why the class A stockholders should not be allowed to vote on any or all of those proposals.

The stockholders, by expressing their approval of Mr. Auer's conduct as president and their demand that he be put back in that office, will not be able, directly, to effect that change in officers, but there is nothing invalid in their so expressing themselves and thus putting on notice the directors who will stand for election at the annual meeting. As to purpose (B), that is, amending the charter and by-laws to authorize the stockholders to fill vacancies as to class A directors who have been removed on charges or who have resigned, it seems to be settled law that the stockholders who are empowered to elect directors have the inherent power to remove them for cause (*Matter of Koch,* 257 N. Y. 318, 321, 322; *Abberger* v. *Kulp,* 156 Misc. 210, 212; 1 White on New York Corporations, pp. 558–559; 2 Fletcher's Cyclopedia Corporations [Perm. ed.], §§ 351, 356). Of course, as the *Koch* case points out, there must be the service of specific charges, adequate notice and full opportunity of meeting the accusations, but there is no present showing of any lack of any of those in this instance. Since these particular stockholders

have the right to elect nine directors and to remove them on proven charges, it is not inappropriate that they should use their further power to amend the by-laws to elect the successors of such directors as shall be removed after hearing, or who shall resign pending hearing. Quite pertinent at this point is *Rogers* v. *Hill* (289 U. S. 582, 589) which made light of an argument that stockholders, by giving power to the directors to make by-laws, had lost their own power to make them; quoting a New Jersey case, the United States Supreme Court said: " ' It would be preposterous to leave the real owners of the corporate property at the mercy of their agents, and the law has not done so ' ". Such a change in the by-laws, dealing with class A directors only, has no effect on the voting rights of the common stockholders, which rights have to do with the selection of the remaining two directors only. True, the certificate of incorporation authorizes the board of directors to remove any director on charges, but we do not consider that provision as an abdication by the stockholders of their own traditional, inherent power to remove their own directors. Rather, it provides an additional method. Were that not so, the stockholders might find themselves without effective remedy in a case where a majority of the directors were accused of wrongdoing and, obviously, would be unwilling to remove themselves from office.

We fail to see, in the proposal to allow class A stockholders to fill vacancies as to class A directors, any impairment or any violation of paragraph (h) of article Third of the certificate of incorporation, which says that class A stock has exclusive voting rights with respect to all matters " other than the election of directors ". That negative language should not be taken to mean that class A stockholders, who have an absolute right to elect nine of these eleven directors, cannot amend their by-laws to guarantee a similar right in the class A stockholders, and to the exclusion of common stockholders, to fill vacancies in the class A group of directors.

There is urged upon us the impracticability and unfairness of constituting the numerous stockholders a tribunal to hear charges made by themselves, and the incongruity of letting the stockholders hear and pass on those charges by proxy. Such questions are really not before us at all on this appeal. The

charges here are not, on their face, frivolous or inconsequential, and all that we are holding as to the charges is that a meeting may be held to deal with them. Any director illegally removed can have his remedy in the courts (see *People ex rel. Manice v. Powell,* 201 N. Y. 194).

The order should be affirmed, with costs, and the Special Term directed forthwith to make an order in the same form as the Appellate Division order with appropriate changes of dates.

VAN VOORHIS, J. (dissenting). This proceeding has been instituted under article 78 of the Civil Practice Act to compel, by way of mandamus, the president of R. Hoe & Co., Inc., to call a special meeting of the class A stockholders to act upon four enumerated proposals. "In the case of special meetings, the notice must state the business to be transacted, and no other business than that stated can be transacted." (5 Fletcher's Cyclopedia Corporations [Perm. ed.], § 2009.) The president of Hoe was justified in declining to call a class A stockholders' meeting pursuant to the demand of these shareholders, regardless of whether they constituted a majority of that class (cf. By-Laws, art. I, § 2) if the proposed meeting would be futile for the reason that none of the proposals could be acted upon for which the meeting was to be called. Stockholders' meetings at which illegal action is proposed to be taken are restrained by injunction (*Ripin* v. *United States Woven Label Co.,* 205 N. Y. 442). Certainly the calling of meetings to conduct business which cannot legally be transacted, will not be compelled by mandamus, which lies only to enforce a clear legal right (*People ex rel. Empire City Trotting Club* v. *State Racing Comm.,* 190 N. Y. 31; *Matter of Picone* v. *Commissioner of Licenses,* 241 N. Y. 157). When mandamus is invoked to compel officers to call stockholders' meetings, "It is within the discretion of the court to deny the writ for good legal reasons" (5 Fletcher's Cyclopedia Corporations, § 2000). This is a "judicial" discretion (*Matter of Shulman* v. *Dejonge & Co.,* 270 App. Div. 147; *People ex rel. Walker* v. *Board of Governors of Albany Hosp.,* 61 Barb. 397), and is reviewable in the Court of Appeals, at least where, as here, the relief has been granted (*Gentilala* v. *Fay Taxicabs,* 243 N. Y. 397). Moreover, apart from any

question of discretion, an order is reviewable which granted such relief by mandamus through error of law (*Bachman* v. *Harrington,* 184 N. Y. 458; Cohen and Karger, Powers of the New York Court of Appeals, pp. 609–610, 616).

An examination of the request for a special meeting by these stockholders indicates that none of the proposals could be voted upon legally at the projected meeting. The purposes of the meeting are listed as A, B, C and D. Purpose A is described as " Voting upon a resolution endorsing the administration of Joseph L. Auer, as President of the corporation, and demanding his immediate reinstatement as President." For the stockholders to vote on this proposition would be an idle gesture, since it is provided by section 27 of the General Corporation Law that " The business of a corporation shall be managed by its board of directors ". The directors of Hoe have been elected by the stockholders for stated terms which have not expired, and it is their function and not that of the stockholders to appoint the officers of the corporation (Stock Corporation Law, § 60).

Purpose B of the special meeting is to vote upon a proposal to amend the certificate and the by-laws so as to provide " that vacancies on the Board of Directors arising from the removal of a director by stockholders or by resignation of a director against whom charges have been preferred may be filled, for the unexpired term, only by the stockholders of the class theretofore represented by the director so removed." This proposal is interwoven with the next one (C), which is about to be discussed, which is to remove four directors from office before the expiration of their terms in order to alter the control of the corporation. Proposal B must be read in the context that the certificate of incorporation provides for eleven directors, of whom the class A stockholders elect nine and the common stockholders two. So long as any class A shares are outstanding, the voting rights with respect to all matters " other than the election of directors " are vested exclusively in the holders of class A stock, with one exception now irrelevant. This means that the common stockholders are entitled to participate directly in the election of two directors, who, in turn, are authorized by the certificate to vote to fill vacancies occur-

ring among the directors elected by the class A shareholders. This proposed amendment would deprive the directors elected by the common stockholders of the power to participate in filling the vacancies which petitioners hope to create among the class A directors, four of whom they seek to remove by proposal C which is about to be discussed. Such an alteration would impair the existing right of the common stockholders to participate in filling vacancies upon the board of directors and could not be legally adopted at this meeting demanded by petitioners from which the common stockholders are excluded. The effect would be to reclassify voting powers of the common stockholders within the meaning of subdivision 3 of section 35 of the Stock Corporation Law, which is something that section 51 prohibits without the vote of " the holders of all shares of any class or classes that will be adversely affected ", and this is ordained even " regardless of any provision to the contrary in the certificate of incorporation ".

Purpose C of the special meeting is to vote " upon a proposal that the Stockholders (1) hear the charges preferred against Harry K. Barr, William L. Canady, Neil P. Cullom and Edwin L. Munzert, and their answers thereto; (2) determine whether such conduct on their part or on the part of any of them was inimical to the best interest of R. Hoe & Co., Inc., and if so (3) vote upon the removal of said persons or any of them as directors of R. Hoe & Co., Inc., for such conduct, and (4) vote for the election of directors to fill any vacancies on the Board of Directors which the Stockholders may be authorized to fill." By means of this proposal, it is sought to change the control of the corporation and to accomplish what A could not achieve, viz., remove the existing president and reappoint Mr. Joseph L. Auer as president of the corporation. Neither the language nor the policy of the corporation law subjects directors to recall by the stockholders before their terms of office have expired, merely for the reason that the stockholders wish to change the policy of the corporation. In *People ex rel. Manice* v. *Powell* (201 N. Y. 194, 201) this court said that " It would be somewhat startling to the business world if we definitely announced that the directors of a corporation were mere employees and that the stockholders of the corporation

have the power to convene from time to time and remove at will any or all of the directors, although their respective terms of office have not expired.'' Fraud or breach of fiduciary duty must be shown (*Matter of Koch,* 257 N. Y. 318; *Raub* v. *Gerken,* 127 App. Div. 42; *Fox* v. *Cody,* 141 Misc. 552). In that event, directors may be removed from office before expiration of term by an action brought under subdivision 4 of section 60 of the General Corporation Law. In addition to such procedure, paragraph Fourteenth of the certificate of incorporation states: '' Any director of the corporation may at any time be removed for cause as such director by resolution adopted by a majority of the whole number of directors then in office, provided that such director, prior to his removal, shall have received a copy of the charges against him and shall have had an opportunity to be heard thereon by the board. The By-Laws may provide the manner of presentation of the charges and of the hearing thereon.''

Petitioners have instituted this proceeding on the theory that although no power is conferred upon the stockholders by the certificate or the by-laws to remove directors before the expiration of their terms, with or without cause, power to do so for cause is inherent in them as the body authorized to elect the directors (citing *Matter of Koch,* 257 N. Y. 318, *supra*; 2 Fletcher's Cyclopedia Corporations [Perm. ed.], §§ 352, 357; Ballantine on Corporations, § 185.) Petitioners have argued that the grant of this power to the board of directors to remove some of their number for cause after trial, does not eliminate what is asserted to be the inherent right of the stockholders to do likewise. No cases are cited in support of the latter proposition. To the contrary is Fletcher, in the same section cited by petitioners as authorizing the stockholders to act (§ 357), who continues by stating: '' Of course, if the statutes, charter or by-laws place the power of removal in the directors or other officers, they are the ones to exercise it.'' In the same section, Fletcher also states: '' The general right of removal of directors is with the stockholders, and ordinarily a director cannot be removed by his fellow directors, but this power the stockholders may delegate to the directors.''

The petition fails to state facts on account of which the remaining directors would be disqualified to hear and decide whatever charges may be presented against the four directors above named, nor has any reason been shown why the delegation of this power to the directors in the corporate charter does not preclude the exercise of the same power by the stockholders. If petitioners' position be correct, separate trials on the same charges might be conducted by both the board of directors and by the stockholders, with conflicting results.

Such cases as have been cited in support of a power in the stockholders to remove directors for cause are clear in holding that such action can be taken only subject to the rule that '' specific charges must be served, adequate notice must be given and full opportunity of meeting the accusations must be afforded'' (*Matter of Koch*, 257 N. Y. 318, 322, *supra*).

Although the demand by these petitioners for a special meeting contains no specification of charges against these four directors, the proxy statement, circulated by their protective committee, does describe certain charges. No point appears to be made of the circumstance that they are not contained in the demand for the meeting. Nevertheless, although this proxy statement enumerates these charges and announces that a resolution will be introduced at the special meeting to hear them, to determine whether sufficient cause exists for the removal of said persons as directors, and, if so, to remove them and to fill the resulting vacancies, the stockholders thus solicited are requested to sign proxies running to persons nominated by petitioners' protective committee. Inasmuch as this committee, with which petitioners are affiliated, has already charged in the most forceful terms that at least one of these directors has been guilty of misconduct and that '' his *clique* of directors have removed Joseph L. Auer as President '', it is reasonable to assume that the case of the accused directors has already been prejudged by those who will vote the proxies alleged to represent 255,658 shares of class A stock, and that the 1,200 shareholders who are claimed to have signed proxies have (whether they know it or not) voted, in effect, to remove these directors before they have been tried. The consequence is that these directors are to be adjudged guilty of fraud or breach of faith in

absentia by shareholders who have neither heard nor ever will hear the evidence against them or in their behalf. Such a procedure does not conform to the requirements of *Matter of Koch* (*supra*) nor the other authorities which have been cited, and is far removed from " a law which hears before it condemns, which proceeds upon inquiry, and renders judgment only after trial." (Brief by Daniel Webster in *Trustees of Dartmouth Coll.* v. *Woodward*, 4 Wheat. [U. S.] 518, 581.) The charges against these directors enumerated in the proxy statement are described as having been preferred by one John Kadel* and are to the effect that these four accused directors supported a resolution on July 2, 1953, that severance pay of $50,000 be granted to Mr. Auer " upon condition that he resign and that he sign an agreement not to participate, with any stockholders group or otherwise, in any action against any of the directors or officers of the Company." This money was not in fact paid to Auer. The charge based thereon against these directors is that there was a breach of trust in offering to pay $50,000 of the corporation's money in consideration of a covenant by Auer not to participate (as the minutes of the directors' meeting of July 2, 1953, actually read) in " any hostile action against the company, its officers and directors." It is not clear how this constituted actionable misconduct in view of the circumstance that none of this money actually was paid, and that there was no showing in this record of any misconduct on the part of these four directors which might have furnished a basis for a stockholders' derivative action by Auer against these directors. It is not so plain that these directors should be subjected to trial by stockholders, acting through proxies who are evidently prepared to oust them with or without cause, that a mandamus order should, in any event, be issued to compel the calling of a special

---

*It appears that Mr. John Kadel entered a formal appearance upon the argument herein at Special Term, wherein he described himself on the record as follows: " A stockholder of R. Hoe & Company and the person who made the complaint about the actions of the directors which is the basis of a campaign now being waged and that has been waged by R. Hoe Stockholders Protective Committee. In other words, I am, what you might say, the nominal plaintiff in the action." This is a formal indication, if such were necessary, that the charges on which these directors are to be tried at the stockholders' meeting have already been decided against them.

meeting for that purpose. The other charges, viz., that Mr. Cullom was paid $300 a month as rental for office space in his suite at 63 Wall Street, and that he engaged one of his personal friends and clients in connection with appraisal proceedings involving the common stock of the company for which the friend was paid $5,000, are not supplemented by further facts indicating that such conduct was hostile to the interest of the corporation.

It is not for the courts to determine which of these warring factions is pursuing the wiser policy for the corporation. If these petitioners consider that the stockholders made a mistake in the election of the present directors, they should not be permitted to correct it by recalling them before the expiration of their terms on charges of fraud or breach of fiduciary duty without a full and fair trial, which, if not conducted in court under section 60 of the General Corporation Law, is required to be held before the remaining directors under paragraph Fourteenth of the certificate of incorporation. The difficulty inherent in conducting such a trial by proxy may well have been the reason on account of which the incorporators delegated that function to the board of directors under paragraph Fourteenth of the certificate of incorporation. If it were to develop (the papers before the court do not contain evidence of such a fact) that enough of the other directors would be disqualified so that it would be impossible to obtain a quorum for the purpose, it may well be doubted that these directors could be tried before so large a number of stockholders sitting in person (if it were possible to assemble them in one place) or that they could sit in judgment by proxy. In ancient Athens evidence is said to have been heard and judgment pronounced in court by as many as 500 jurors known as dicasts, but in this instance, if petitioners be correct in their figures, there are 1,200 class A stockholders who have signed requests or proxies, and these are alleged to hold only somewhat more than half of the outstanding shares. Since it would be impossible for so large a number to conduct a trial in person, they could only do so by proxy. Voting by proxy is the accepted procedure to express the will of large numbers of stockholders on questions of corporate policy within their province to determine, and it would be suit-

able in this instance if the certificate of incorporation had reserved to stockholders the power to recall directors without cause before expiration of term, as in *Abberger* v. *Kulp* (156 Misc. 210), but it is altogether unsuited to the performance of duties which partake of the nature of the judicial function, involving, as this would need to do if the accused directors are to be removed before the expiration of their terms, a decision after trial that they have been guilty of faithlessness or fraud. Section 60 of the General Corporation Law is always available for that purpose if the occasion requires.

The final proposal to be voted on at this special meeting (D) relates simply to an amendment to the by-laws so as to provide that a quorum shall consist of not less than one half of the number of directors holding office and in no event less than one third of the authorized number of directors. Section 8 of article II of the by-laws already provides that one half of the total number of directors shall constitute a quorum; the modification that a quorum shall in no event be less than one third of the authorized number of directors was proposed in the event of the removal of the four defendant directors whom petitioners seek to eliminate.

Inasmuch as we consider that for the foregoing reasons none of the business for which the special meeting is proposed to be called could legally be transacted, this proceeding should be dismissed. It is not necessary to analyze whether under other circumstances an order would lie in the nature of an alternative rather than a peremptory mandamus.

The petition should be dismissed, with costs in all courts.

Lewis, Ch. J., Dye, Fuld and Froessel, JJ., concur with Desmond, J.; Van Voorhis, J., dissents in opinion in which Conway, J., concurs.

Order affirmed.