OPINION OF THE COURT
Nicholas Figueroa, J.
This is a petition pursuant to CPLR article 78 for a judgment setting aside a March 27, 1999 resolution by respondent’s Atlantic Chapter suspending their New York City Group, amending its by-laws, and reconstituting its executive committee.
Respondent Sierra Club (Club), founded by the naturalist, John Muir, in 1892, is dedicated to preserving and restoring the natural and human environment, including its ecosystems and resources, and is organized pursuant to California’s Nonprofit Public Benefit Corporation Law. In addition to its national headquarters in San Francisco, the Sierra Club has regional chapters in every State. To augment the Sierra Club’s mission at the grassroots, these chapters foster the creation of local entities known as groups. The Atlantic Chapter covering New York State has 11 such groups, including petitioners’ New York City Group, which covers the City’s five boroughs. Groups are considered subunits, are not separately incorporated, and have no authority to enter into lawsuits, or take legal action without consent of the Club’s Board of Directors.
Regional chapters, such as the Atlantic Chapter, although not separately incorporated, have wide operational latitude. The Atlantic Chapter, headquartered in upstate New York, has historically permitted the formation of local groups such as petitioners’ New York City Group. The 11 groups in the State total some 30,000 members.
During the past several years, conflicts have developed between the New York City Group and the Atlantic Chapter *946 which have been attributed to differing methodology and conflicting political views. These conflicts have resulted in a series of skirmishes and maneuvers. For example, in 1997, the Atlantic Chapter made arrangements to reorganize its office in New York City, which it had previously operated jointly with the New York City Group, and instead opted to run it with the national Club alone.
The instant schism, however, which both sides lament, was precipitated by the direct-mail fundraising activities of the New York City Group. To begin with, the national Sierra Club’s rules provide as a matter of policy that only its Atlantic Chapter may use direct-mail fundraising appeals during March. Consistent with this prohibition, section 4.2 of the New York City Group by-laws, in effect during the relevant period, also barred the Group from engaging in direct-mail fundraising. However, in March 1998, the Atlantic Chapter learned that the New York City Group, in contravention of Chapter policy and the Group’s own by-laws, had mailed a solicitation for funds during the prohibited March period. The ensuing imbroglio was temporarily quelled by an accord between the Atlantic Chapter and the New York City Group providing that any future direct-mail solicitations would necessitate the Chapter’s prior approval. Accordingly, in January 1999, the Chair of the New York City Group sought such approval directly from the Sierra Club’s national office, and was informed that the Atlantic Chapter’s permission was required.
Putting to rest any fundraising question, on January 30, 1999, the Atlantic Chapter passed a resolution specifically prohibiting their 11 constituent groups from directly soliciting funds during March. Notwithstanding this resolution, the executive committee of the New York City Group approved the mailing of another March 1999 fundraising letter.[1] In response, the Atlantic Chapter’s executive committee scheduled an open meeting for March 20, 1999 at a hotel near La Guardia Air Terminal. At this meeting, three resolutions were approved by the Chapter’s executive committee for consideration by its Board of Governance at their March 27th quarterly meeting which, for the Group’s convenience, was held in Manhattan. All members of the New York City Group who attended were given the opportunity to speak against the three resolutions. Nevertheless, at the end of the debate, the Board of Governance *947 adopted the resolutions suspending the Group. It was also decided that in the interim the Group would be administered by a Review New York Committee for one year.

Forum Non Conveniens and Foreign Corporate Governance

Respondent urges this court to decline jurisdiction because the dispute concerns the internal governance of the Sierra Club, a foreign corporation and, therefore, requires an adjudication of matters relating solely to the management of the internal affairs of a foreign corporation. In the instant controversy, however, the resolutions affecting the New York City Group were made by the Atlantic Chapter in order to resolve a local dispute, with San Francisco only nominally involved. Given the surrounding circumstances of the instant dispute, application of the rule concerning the internal governance of a foreign corporation would be inappropriate.
Furthermore, the distinction respondent draws between the “internal affairs” rule and forum non conveniens is outmoded, as these jurisdictional questions are currently analyzed under general principles of forum non conveniens law. As early as 1947, the United States Supreme Court dispensed with the doctrine in Federal court, holding that the ultimate inquiry must be directed at where trial would best serve the convenience of the parties and the interests of justice, and in the scheme of this analysis, the place of corporate domicile was of little importance. (Foster v [American] Lumbermens Mut. Cas. Co., 330 US 518, 527 [1947].) Although Roster has subsequently been distinguished by Federal courts on other grounds, it still retains authority for the principle that the internal affairs rule is merely one facet to be considered under forum non conveniens.[2]
The evolution of the law in this direction was discussed in Broida v Bancroft (103 AD2d 88 [2d Dept 1984]). In Broida, the Court stated that the rule against noninterference with the “internal affairs” of a foreign corporation is no longer entitled to separate status and should be treated as merely one factor when deciding the applicability of the forum non conveniens doctrine.
Many, if not all, of the events at issue here involved the New York Chapter and Group, and, as such, support New York jurisdiction. To begin with, this controversy involves solely New York State residents, including the Group’s 12,000 *948 members. The acts complained of took place in New York, and the immediate and substantial impact of the outcome, although resonating in California and elsewhere, is primarily felt here. Furthermore, nothing in the facts suggests that litigation in California would be better aligned with the interests of the litigants and the public. Accordingly, upon over-all analysis, this court finds ample contact with New York on which to base jurisdiction.

Abuse of Discretion

Petitioners charge that the suspension of the entire New York City Group was an abuse of discretion because it blanketed all members regardless of their knowledge or complicity in the decision to mail the fundraising letter. In this context, abuse of discretion is just another way of defining something that is arbitrary and capricious. {See, Siegel, NY Prac § 561 [3d ed 1999].) There was nothing per se arbitrary and capricious in the Atlantic Chapter exercising its business judgment to remedy an organizational impasse. The Group’s second unauthorized direct-mail solicitation of funds was the equivalent of active wrongdoing, which potentially threatened the financial underpinnings of the Sierra Club in New York. Therefore, the Chapter sought to redress the situation by suspending and reconstituting the executive committee, the source of the problem.
The suspension was a judgment call, inspired by the Chapter’s attempt to rectify a difficult internal problem, and was within the limits of its discretion. As such, courts are generally reluctant to interfere with the business judgment of corporations, and California courts have consistently held that the business judgment rule protects corporations such as the Sierra Club from judicial second-guessing. The Chapter behaved rationally by taking what it judged to be appropriate action. Consequently, it cannot be said that the decision to suspend and reconstitute the New York City Group was arbitrary and capricious. (Williams v Inglewood Bd. of Realtors, 219 Cal App 2d 479, 33 Cal Rptr 289 [1963]; California Trial Lawyers Assn. v Superior Ct., 187 Cal App 3d 575, 231 Cal Rptr 725 [1986].)

Lawful Procedure

That the Chapter was justified in its business judgment does not mean that an article 78 proceeding is not an appropriate vehicle where individual membership rights in a private orga *949 nization are abrogated in violation of lawful procedure. New York courts have long provided such relief to members ousted in violation of a voluntary association’s internal rules. (Matter of Paglia v Staten Is. Little League, 38 AD2d 575 [2d Dept 1971]; Auer v Dressel, 306 NY 427 [1954]; Weidenfeld, v Keppler, 176 NY 562 [1903]; Briggs v Technocracy, Inc., 85 NYS2d 735 [1948].) A similar outcome is dictated under section 5341 of California’s Corporations Code, which requires 15 days’ notice of any proposed suspension, the reasons therefor, and an opportunity to be heard, in order for the suspension to meet the basic requirements of procedural fairness and have legal effect.
Respondent argues no membership privileges were terminated upon the New York City Group’s suspension, since members of the New York City Group still retained their right to individual membership in the national Sierra Club, as well as its Atlantic Chapter. Respondent further contends that the scope of membership rights in a private voluntary association is measured solely by the terms of its by-laws. Therefore, since the national Sierra Club’s by-laws take no formal cognizance of a group’s membership or leadership, its suspension is subject to the discretion of the Sierra Club and its chapters. Accordingly, respondent concludes that the Sierra Club, and more specifically its chapters, may effectuate its business judgment as it did in this case by suspending groups without procedural formality. This court finds the Sierra Club’s position contrary to established notions of procedural due process and fundamental fairness.[3] Where membership rights are abrogated in violation of proper procedure, both California and New York courts have held a by-laws’ silence concerning notice and a right to a hearing does not deprive a member of such rights. In Swital v Real Estate Commr. (116 Cal App 2d 677, 679, 254 P2d 587, 588), the California District Court of Appeals, citing Ellis v American Fedn. of Labor (48 Cal App 2d 440, 443-444, 120 P2d 79, 80), stated that “[i]n this state ‘a member of an unincorporated association may not be suspended or expelled * * * without charges, notice and a hearing, even though the rules of the association make no provision therefor.’ ” (Also see, New York court’s ruling in Briggs v Technocracy, Inc., supra.)
The national Sierra Club’s ideology, relative to its groups, conflicts with the actualities. To start with, the New York City *950 Group is organized pursuant to its own by-laws, which are approved by the Atlantic Chapter and reviewed by the national Sierra Club. The Atlantic Chapter’s by-laws expressly recognize the New York City Group by empowering it to elect its own officers and executive committee. Equally meaningful is the fact that the Group also sends its members to sit on the policy-making Atlantic Chapter Board of Governance. These attributes and interaction suggest at least a de facto recognition of the New York City Group as a fully fledged entity within the Sierra Club’s organizational structure, notwithstanding the absence of any express provision for its establishment or suspension in the national Sierra Club by-laws. Any other interpretation would render a group’s status, from one day to the next, dependent upon the Sierra Club’s selective perception. Furthermore, the failure of the Atlantic Chapter’s by-laws to provide for a group’s suspension, while permitting its creation, suggests a lacunae in a sparsely drafted document, rather than a deliberate attempt to make suspension discretionary without notice to those affected. The anomaly of such a result is tacitly acknowledged by the national Sierra Club’s recent amendments to its by-laws requiring that all chapters adapt their own bylaws to expressly provide notice to group members prior to suspension or dissolution.
Therefore, the crucial question remains whether the Chapter’s procedures leading to the suspension were made in violation of lawful procedure. In other words, were the members of the New York City Group, including its executive committee, given timely notice of the proposed resolutions and an opportunity to be heard so as to comport with due process? In his affidavit, the Vice-Chair of the Chapter’s Board of Governance states that written notification was sent by e-mail on March 9th to members of the Chapter’s Board of Governance, “as well as other interested parties,” advising them that the Atlantic Chapter had scheduled a meeting in New York City for March 20th to consider the Chapter’s resolutions in response to the Group’s fundraising. This e-mail also disclosed that the Chapter’s executive committee would “hear the NYC ExCom’s side of the story.” Another e-mail which was sent on March 11, 1999 to the Board of Governance “and others” included a reminder that the Chapter would hold an “open meeting” near La Guardia Airport on March 20th.
There is no evidence that members of the Group, including its executive committee, responded to, or even received this e-mail. This question becomes critical because the e-mail does *951 not appear to list all the Group’s officers or their executive committee among the addressees. Furthermore, notwithstanding any assumptions one could make regarding the widespread access to computer technology today, it still remains a matter for conjecture as to which members of the Group actually had access to one. Additionally, there is nothing to indicate that the agenda for this March 20th meeting was sent to Group members. Interestingly, the Chapter’s minutes for the March 20th meeting reflects that “no one * * * appeared at the meeting from the New York City Group, neither as spokesperson nor as observer.”
The same may be said concerning the Group’s executive committee attendance at the March 27th Board of Governance meeting. Although the Vice-Chair of the Board of Governance states in his affidavit that the e-mail was sent to the “Board of Governance and others,” whom these “others” were remains unknown. It is noteworthy that the only evidence of mail notifications addressed to Group members was on March 29th to inform them of their suspension.
Given the foregoing circumstances, these open questions must be resolved in favor of the Group, who unlike the respondent had no control over the procedures. These discrepancies are ordinarily worthy of untanglement, except for the fact that they are thrust into the background by respondent’s nonadherence to its own written procedures. One of these, section 8.4 of its by-laws, regarding the suspension of chapters, requires written grounds for the proposed suspension of a chapter and a reasonable opportunity for members to present opposing evidence. By analogy, this procedure should have been followed by the Sierra Club in its suspension of the New York City Group. Similarly, there were also violations of respondent’s Standing Rule 15-1-2, entitled Breach of Leadership Trust, which sets forth the procedures for expulsion of elected or appointed Club members in general. The formalities of sections 4 through 8 of Standing Rule 15-1-2 were not followed in this instance, which require that investigations of misconduct by the national Board or Organizational Effectiveness Governance Committee be made on notice, via certified mail, to the respective member, as well as to the group led by that member, providing 30 days for response before suspension.
Respondent did not adhere to these procedures in suspending the New York City Group, and its e-mail communications cannot be deemed to fulfill the notice requirements. It is generally accepted that any substantial violation of applicable proce *952 dure, as set forth in CPLR 7803 (3) and section 5341 of the California Corporations Code, for example, is a basis for overturning a determination. This conclusion would hold even in the absence of an express provision in an organization’s bylaws setting forth procedural safeguards that must be followed prior to suspension of group membership. (See, Swital v Real Estate Commr., 116 Cal App 2d 677, 254 P2d 587; Briggs v Technocracy, Inc., 85 NYS2d 735, supra.)

Decision

The Sierra Club’s resolutions suspending the New York City Group were appropriate as an exercise of business judgment. The court nevertheless finds that the Sierra Club failed to provide timely notice and an opportunity to be heard to the New York City Group. Therefore, it is hereby ordered that judgment be granted in favor of petitioners as to their first cause of action, in that the suspension of the New York City Group by respondent was conducted without the requisite notice and a meaningful opportunity to be heard.
[Portions of opinion omitted for purposes of publication.]

. Petitioners depose that they did not participate in, nor approve of, this course of action undertaken by other members of the New York City Group’s executive committee.

. Mercier v Sheraton Intl., 935 F2d 419 (1st Cir 1991).

. Whether due process was afforded the New York City Group by the Chapter comes down to a question of fundamental fairness. (See, Lassiter v Department of Social Servs., 452 US 18 [1981].)