WESTERN OIL FIELDS, INC., and Richard M. Barnholt, Jr., Plaintiffs,

v.

V. W. McKNAB, Walter K. Togikawa, Thomas J. Maloney, Melvin F. Endicott and Joe Park, Defendants.

Civ. A. 8569.

United States District Court
D. Colorado.

May 21, 1964.

Wood, Ris & Hames, William K. Ris, Denver, Colo., for plaintiffs.

Bromley & Kingsley, Robert T. Kingsley, Denver, Colo., for defendants.

ARRAJ, Chief Judge.

This matter is before the Court on plaintiff's motion for protective Orders. This phase of the litigation arises out of a spirited fight between management and a group of shareholders for control of the corporation.

On May 8, 1964, this Court entered its Order providing for the appointment of a Special Master to supervise and preside over the meeting of the shareholders of the company to be held on May 25, 1964. In its Order the Court provided among other things:

"By agreement of the parties the Court finds and decrees that an Annual Meeting of the stockholders of Western Oil Fields, Inc., a Colorado corporation, has been lawfully called and is set for Monday, May 25, 1964, at 2:30 P.M., MST, to convene at the Company's offices at 1827 Grant Street, Denver, Colorado to transact all regular business as may properly come before the meeting, including the election of a Board of Directors to serve the ensuing term and until election and qualification of their successors. It is further ordered that such Annual Meeting shall proceed on the date and at the time and place stated."

On May 11, 1964, the Court appointed Charles A. Baer as Special Master and he qualified on that date. Since then he has been and now is actively engaged in carrying out his assigned duties. The motion for protective Orders was filed May 15, 1964; in the motion plaintiffs assert that defendants purported to represent a substantial group of shareholders and have solicited proxies from other shareholders through mailings "which are, in part, untrue, incomplete, misleading, full of innuendoes and the same amount to either actual or constructive fraud made in conflict with the fiduciary obligation to the other shareholders which the defendants have undertaken." Plaintiffs further assert that by reason of such mailings a substantial number of shareholders may have been deceived as to the true facts surrounding the controversy between the parties and that a fair election cannot be held on May 25, 1964, because of the insufficient time for the shareholders to be informed as to the facts and issues upon which their proxies are to be sought. Plaintiff asks that the annual meeting set for May 25, 1964, be postponed, that the Court enter an Order cancelling all proxies and proxy solicitations previously submitted and that the Court authorize further solicitations by both parties by enjoining all parties in such proxy statements to relate only facts constituting a fair complete statement surrounding the matter. Defendants, by their answer, deny that statements made by them "are untrue, misleading, incomplete and full of in-

nuendoes" and further deny that shareholders have been deceived as to the true facts surrounding the controversy. They further state that plaintiff officer has not shown his good faith in representing the interests of the shareholders.

Plaintiff filed an affidavit in support of its motion. Defendants filed a counter affidavit and both sides submitted oral testimony at the hearing held on May 19, 1964.

In view of the legal issues raised by this motion, it would be desirable to have more time available for a further study of the problem. Such a luxury is precluded by the nearness of the date and time set for the shareholders meeting—on May 25th of this month. The limited time suggests a prompt ruling by the Court.

There was a dearth of factual evidence adduced by the parties at the hearing, although the Court offered all parties a full opportunity to present evidence. Very few legal authorities were cited by either party, and the arguments made by counsel were largely confined to charges of fraud and the issuing of false statements on the one side, which were answered by charges of incompetence of management on the other. In other words, plaintiffs said, "You did," while defendants said, "We did not." The issue was joined, but very little aid was given the Court to resolve it.

Since both sides agreed that the proxy solicitation here is not governed by the SEC Proxy Rules (X–14–A), we are to be guided by Colorado law, this being at the outset a diversity suit. In argument, however, neither side cited, nor have we been able to find any Colorado statutes relating to solicitation of proxies. Likewise, we have been unable to find any decision of the Colorado Courts which deals with the problem. Many of the cases cited by counsel deal with SEC proxy rules and are therefore not controlling here. Others, which are not based on SEC proxy rules, are rooted in specific state statutory law authorizing suits to contest the validity of elections. We have been forced, therefore, to look elsewhere for guidance. Some of the materials we have found most helpful include Aranow & Einhorn, Proxy Contests for Corporate Control (1957); Aranow & Einhorn, State Court Review of Corporate Elections, 56 Colum.L.Rev. 155 (1956); Note, Standards of Disclosure in Proxy Solicitation of Unlisted Securities, 1960 Duke Law Journal 623; 2 Loss, Securities Regulation; Fletcher, on Corporations; Loss, The SEC Proxy Rules and State Law, 73 Harv.L.Rev. 1249 (1960). From a review of these authorities and those cited by counsel, we have come to the following conclusions.

Though some of the commentators have repeatedly urged that the SEC proxy rules be broadened to cover a corporation of this size, Congress has not yet seen fit to make such a change. Until such a change is made, or until the states strengthen their own legislation, there will remain a substantial difference between federal law, based on the SEC rules, and state law. As noted by Aranow & Einhorn, in their work entitled Proxy Contests for Corporate Control (1957) at p. 434, "Apparently a stronger showing of fraud must be made when an injunction is sought under state law than when it is sought for a violation of SEC Proxy Rule X–14A–9 forbidding false or misleading statements." Continuing at page 435, the authors say:

> "It is a general principle of law that courts will not interfere in the internal management of a corporation unless there has been a clear violation of law or a wide departure from chartered powers, or fraudulent acts detrimental to the welfare of the corporations."

> "However, the drastic remedy of a temporary injunction is not granted unless a clear right thereto is established by the undisputed facts. Where an injunction is sought to enjoin the solicitation or voting of proxies, the moving papers must disclose an imperative necessity to prevent an irreparable wrong or damage."

The Massachusetts Federal District Court stated the same principle in Textron, Inc. v. American Woolen Co., 122 F. Supp. 305 (D.Mass.1954), the Court said at p. 312:

"Finally, the defendant contends that granting a preliminary injunction is extraordinary relief, and should not be done in the absence of compelling reasons, even though a prima facie case of a lack of quorum has been presently made out. For this there is much to be said. If the court were in considerable doubt as to the eventual outcome of the suit it would resolve those doubts against issuing any preliminary injunction regardless of the possible complications which might follow from allowing the directors now to be declared elected by the defendant, and subsequently to be held by the court to be not."

A determination of whether there is "considerable doubt in the outcome of the case" can come only from an analysis of all the circumstances of the case. Illustrative of such an analysis is the commentary of Aranow and Einhorn on the case of Matter of R. Hoe & Co., 137 N.Y.S.2d 142 (Sup.Ct.1954) contained in their article entitled State Court Review of Corporate Elections, 56 Colum.L.Rev. 155 (1956) at pp. 160–61. There they noted that that case

"illustrates the difficulty in making out a case of fraudulent solicitation warranting a new election. At the conclusion of a very bitter proxy contest, a stockholder's committee succeeded in securing control of the board of directors. Members of the defeated management group petitioned to have the election set aside on the ground that the committee's solicitation materials had contained false charges against the management. The court found that some support existed for several of the charges made against the management, but that this was not the sole determining consideration. The

court believed it more important that the management had fully availed itself of the opportunity to present to the stockholders its side of the controversy surrounding the charges. The stockholders had been adequately furnished with both versions of the alleged misstatements, and they had voted overwhelmingly for the committee's slate of directors. The court concluded that this was a strenuous and heated proxy battle full of charges and recriminations, but not so tainted with fraud as to justify judicial interference."

The authors emphasize the following language stated at pages 147–48 of the Hoe opinion to the effect that " \* \* \* [a] certain amount of innuendo, misstatement, exaggeration and puffing must be allowed as a natural by-product of a bitter campaign."

The Court is of the opinion that it should not grant the relief requested. As heretofore noted, the parties agreed that the meeting called for Monday, May 25, 1964, was lawfully called to transact all regular business including election of a Board of Directors. From the presentation made by the plaintiff, it appears that in some of defendant's solicitations they may have indulged in some inaccuracies and made some innuendoes. Whether or not such activities constitute fraud and aided defendants in securing proxies has not yet been demonstrated to the Court; in fact, it may be that such facts cannot be established until after the shareholders' meeting is held. In addition, it is possible that management may win the election. The question would then, of course, be moot.

■■ In order to entitle plaintiffs to the extraordinary relief they seek—a postponement of the meeting and the cancellation of proxies already obtained— they must establish their right to such relief by clear and convincing evidence. This they have failed to do. There is very little evidentiary matter in Barnholt's affidavit. For the most part, he merely said that the representations made in defendants mailing were "false

and untrue." That assertion put the matter of the truth or falsity of the statements in issue, but it did not establish their falsity. The live testimony of witness Berglund was of little aid or comfort to plaintiffs. As a matter of fact, he attested to the truth of at least two of defendant's statements that plaintiff claimed were untrue, namely, (1) That Management had not called a shareholders meeting since 1961, and (2) that defendant McNabb was instrumental in obtaining the loan for plaintiff corporation from the Fourth National Bank of Wichita for approximately one million dollars.

In other parts of Mr. Berglund's testimony he identified certain reports made by management, explained why management did not develop an oil lease in Venezuela, and why management opposed the acquisition of a lease in the United States which had been offered it. This phase of his testimony merely provided answers to some of the charges made in defendant's mailings; it did not establish them as being false or untrue.

◼ It is essential to plaintiff's case that the accused statements be significant and material, in the sense that they influenced or reasonably could have influenced, shareholders to give their proxy in a situation where they would not have done so had the alleged fraudulent statement or statements not been made. It must be noted here that no person who has executed a proxy has testified—by affidavit—or otherwise—that he was misled by any of the statements made by defendants.

The mailings made by defendants here were not the ordinary proxy statements normally sent out by management prior to a shareholders meeting. Here the two groups were—and are—engaged in a determined and bitter struggle for control of the corporation. And this is not the first round of the fight. It appears from the evidence that the battle against management has been going on for several years. The defendants have a case against management, and they have a right to present that case—in a legal and proper way, of course—to the shareholders.

◼ It is a matter of common knowledge that there is difficulty in successfully challenging entrenched management. The latter has every advantage. It has, for example, shareholders lists which associates of defendants were unable to obtain until after suit was threatened, and then at their own expense. Management always stands to gain from stockholders inertia, and it has the overwhelming strategic advantage of access to the corporate treasury for the substantial costs of solicitation.

In the case at bar, defendants made certain charges against management in their several mailings. Management answered those charges in its mailings, and made certain charges against some of the individuals that defendants proposed as directors. Thus the issues were made up. A proxy contest for election to a corporate office is somewhat like a campaign for election to a political office. A good deal of freedom for candidates in political contests has been traditional in American life. Both sides here exercised such freedom in their campaign material.

Counsel have not suggested to the Court and the Court has been unable to fashion or otherwise devise any workable formula by which the Master could supervise the preparation of further mailings by either side to this controversy. Consequently, there are no means known to the Court whereby the relief now sought by plaintiffs could in fact be given. And as has been previously noted, plaintiffs have not sustained their burden of establishing that defendants used false and fraudulent statements in their proxy solicitation statements and that plaintiffs have or will suffer irreparable injury thereby.

It is therefore ORDERED that plaintiff's motion for protective Orders be, and the same hereby is, denied without prejudice to the right of plaintiffs, if defendants succeed in electing their slate

of directors, to challenge the right of defendants (or their nominees) to serve as directors, and to put in issue therewith, the validity of proxies obtained by defendants.