(118 App. Div. 616; 53 Misc. Rep. 344)

In re EMPIRE STATE SUPREME LODGE OF THE DEGREE OF HONOR.

(Supreme Court, Special Term, Erie County.   February, 1907.)

1. INSURANCE—MUTUAL COMPANIES—BY-LAWS—ADOPTION.

Insurance Law, § 209, Laws 1892, p. 2013, c. 690, provides that every insurance association, other than secret fraternal societies, must, before the adoption of any by-laws or amendments thereto, cause the same to be mailed to the members and directors of such association, together with a notice of the time and place when the same shall be considered, etc., and that not less than five days' notice of such meeting shall be given to each director, and to each member and policy holder, in such manner as the by-laws direct, etc. *Held*, that such section vested in the policy holders of a mutual insurance organization the sole power to adopt by-laws for its management.

2. SAME—EXECUTIVE COMMITTEE.

General Corporation Law, § 29, Laws 1892, p. 1811, c. 687, provides that subject to the by-laws, if any, adopted by the members of a corporation, the directors may make necessary by-laws for the corporation; but section 11, subd. 5 [page 1805] declares that no by-law adopted by the board of directors, regulating the election of directors or officers, shall be valid, unless published, as provided, at least 30 days before such election. *Held* that, by-laws adopted by the executive committee of a mutual insurance organization, providing for the election of nine directors for a specified term, without giving the requisite notice, were void.

3. SAME—ELECTIONS—OFFICERS—REVIEW—STATUTES—APPLICATION.

General Corporation Law, § 27, Laws 1892, p. 1811, c. 687, conferring jurisdiction on the Supreme Court to review elections "of any corporation," authorizes it to review an election of directors of a mutual insurance company, which is not a stock corporation.

4. SAME—NOTICE.

General Corporation Law, § 27, Laws 1892, p. 1811, c. 687, gives the Supreme Court jurisdiction to review elections of any corporation on notice being given to the "adverse party, or to those to be affected thereby." *Held*, that where a suit was brought to review an election of directors of a mutual insurance organization, having over 9,000 policy holders, a notice to the corporation itself, and to the members of the board of directors, the legality of whose election was challenged, was sufficient without notice to all the policy holders.

5. SAME—RIGHT TO SUE.

Where directors of a mutual insurance organization were illegally elected, policy holders were entitled to sue to have such election reviewed and set aside, as provided by General Corporation Law, § 27, Laws 1892, p. 1811, c. 687, and were not limited to an application to the Attorney General to proceed in behalf of the state, as authorized by Code Civ. Proc. § 1948.

6. SAME—PETITION—DIFFERENT RESULT—ALLEGATION.

Where directors of a mutual insurance organization were elected before a proper constitution and by-laws had been adopted, fixing the number of directors and the terms of their office, a petition to the Supreme Court to review and annul such election, filed by policy holders, was not defective for failure to allege that a new election would result differently from the one complained of.

7. SAME—ANNUAL MEETING—NOTICE.

Where a published notice of the annual meeting of an insurance society contained no information that any number of directors were to be elected at such meeting to manage the affairs of the association, it was insufficient to justify the election as against nonassenting policy holders.

8. SAME—REINCORPORATION—EFFECT.

Where a mutual insurance society, reincorporated under the general insurance law (Laws 1892, p. 2011, c. 690, art. 6, § 206, as amended), etc.,

103 N.Y.S.—30

providing that in such instances there should be no immediate change in the officers or managing agents of the association, but that the contracts of the old association should become the contracts of the new, and the liabilities of the old become the obligations of the new, such reincorporation did not create a new corporation, but only subjected the corporate entity to the control and provisions of the insurance law and conferred on it the powers and privileges given thereby.

9. SAME—OFFICERS—REORGANIZATION.

General Corporation Law, § 23, Laws 1892, p. 1809, c. 687, provides that if the directors of a corporation shall not be elected on the day designated in the by-laws, the corporation shall not for that reason be dissolved; but every director shall continue to hold his office, and discharge his duties until his successor has been elected. *Held*, that on the reincorporation of a mutual insurance society under the general insurance law, the by-laws of the association in force prior to the reorganization, not in conflict with the provisions of such law, and the old officers of the company composing its executive committee, who under the old by-laws held office until their successors were elected or appointed, continued to be the de jure by-laws and officers of the reorganized corporation until new by-laws were legally adopted and new officers elected.

Proceeding by certain certificate holders of the Degree of Honor, to review the election of nine directors claimed to have been chosen at the annual meeting of the Empire Supreme Lodge of such order, held on June 15, 1906. Election annulled.

Frank W. Stevens, for petitioners.
Simon Fleischmann and Herman Westwood, for respondents.
Lester F. Stearns, for certain policy holders.

WHEELER, J. The corporation was originally incorporated in the year 1886 pursuant to chapter 175, page 172, of the Laws of 1883, authorizing the incorporation of co-operative assessment associations. In January, 1906, it was reincorporated under the provisions of section 206 of article 6, c. 690, p. 2011, of the Laws of 1892, as amended, being the general insurance law. It had a constitution and by-laws governing its corporate action, which provided for its management by an executive committee consisting of the president, vice president, secretary, and two members of the association elected at the annual meeting of the association each year, and these officers were, by the same constitution, to hold office until their successors should be elected or appointed. These officers were in control of the company's affairs at the time of the reincorporation of the association, and continued in control down to the 19th day of June, 1906, when a meeting was held, and the nine respondents in this proceeding were elected, or claimed to have been elected, directors of the association. Three of these gentlemen are claimed to have been chosen by the policy holders of the association as directors for one year, three for two, and three for three years. These nine men thereupon took upon themselves the management of this association as such directors, and this proceeding is now brought by three policy holders of the association to review the election, and to oust the respondents; the contention of the petitioners being that the election mentioned was wholly illegal and void.

The declaration effecting the reincorporation of the association provided as follows:

"The mode in which the corporate powers of the said corporation shall be exercised will be pursuant to its constitution and by-laws and amendments thereto, by a body known and designated as the General Council, which shall be composed of the certificate or policyholders of the said corporation. At all times when said General Council shall not be in session the corporate powers of said corporation shall be exercised by a board of directors, chosen or elected by the General Council in such manner as shall be prescribed by the by-laws of said corporation, which board of directors shall exercise the general control and management of the affairs and of the funds of said corporation," etc.

The articles of the incorporation, therefore, do not assume to provide for the number, or the term of such directors, or the manner or time of their election, but remit all such particulars to by-laws of the corporation to be properly adopted by the association. On the 15th of June, 1906, four members of the executive committee assumed to adopt a code of by-laws for the association, which by-laws provided for the election of nine directors for the terms named. The petitioners, however, contend that the executive committee had no power or legal authority to adopt or prescribe by-laws for the association, either under the by-laws as they existed prior to the incorporation, or under the general insurance law, under which the association was reincorporated.

Section 209 of the insurance law provides as follows:

"Every such association, corporation, or society, other than secret fraternal societies, now authorized to do business in this state, must hereafter before the adoption of any by-laws, or amendments thereto, cause the same to be mailed to the members and directors of such association, society or corporation, together with a notice of the time and place when the same shall be considered, which notice shall be the same as hereinbefore required for such meetings."

The notice required for such meetings in the same section is as follows:

"Not less than five days' notice of each meeting shall be given to each director, and to each member and policyholder who shall have been such for thirty days, in such manner as the by-laws direct, except that in lieu thereof such notice may be given to a subordinate body of a council having a Grand or Supreme body, or to a local board subordinate to the association."

It is conceded that the body of policy holders in this association were never given or served with any proposed code of by-laws, or with any notice of any meeting where any by-laws were proposed to be considered. It goes without argument that the Legislature by the enactment of the provisions of the insurance law above quoted intended to vest in the policy holders of the association the power to adopt by-laws for its management, and that that body alone possessed the power of corporate legislation on that subject. Any by-laws adopted or attempted to be passed by the executive committee touching the number of directors to manage the affairs of the association, or fixing their term of office must therefore be necessarily null and void, unless the old executive committee in management of the affairs of the association had the power to adopt such by-laws by virtue of the

provisions of section 29 of the general corporation law (Laws 1892, p. 1811, c. 687), the latter part of which section reads:

"Subject to the by-laws, if any, adopted by members of a corporation, the directors may make necessary by-laws of the corporation."

The power, however, conferred by this clause is qualified and limited by the latter part of subdivision 5 of section 11 of the general corporation law declaring that:

"No by-law adopted by the board of directors regulating the election of directors or officers shall be valid unless published for at least once a week for two successive weeks in a newspaper in the county where the election is to be held, and at least thirty days before such election."

We, therefore, cannot escape the legal conclusion that no by-laws binding on any policy holder of the association were ever adopted, and the rights of the parties to this proceeding must be determined as though no by-laws were ever attempted to be adopted; for there was not, and could not be, sufficient time between the 15th of June and the 19th of June, 1906, to comply with the requirements of the subdivision last quoted. When the annual election was held only about 1,500 votes out of a total membership of about 9,000 was cast. Most of these votes were cast under proxies claimed to have been obtained. We cannot understand how directors chosen under the circumstances stated can claim to have been legally elected, or entitled to administer the affairs of this company. The members or certificate holders in this association are entitled to determine in the manner pointed out by the statute by the adoption of an appropriate by-law, not only the number of directors who shall administer the affairs of the association, but also the duration of their terms of office; whether all shall be chosen annually, or only a portion of the board shall be elected each year. They have never had the opportunity to even be heard on these questions. In fact, no notice of any legal election has ever been given to the policy holders, and we are forced to the irresistible conclusion that the respondents have no legal claim to the office they now fill, and that the election was illegal and void.

The contention of the respondents that section 27 of the general corporation law, under which this proceeding is instituted, is not applicable to an insurance company organized upon the co-operative or assessment plan, I do not deem sustainable. The argument made is that this is not a stock corporation having capital stock, divided into shares with a registered ownership, entitling the holder of each share to a vote for directors. The twenty-seventh section is a part of the general corporation law. It forms one of the sections of a distinct chapter relating to corporations generally. This chapter classifies and relates to all kinds of corporations and its provisions define how the powers and privileges of corporations may be exercised, whether organized as a stock corporation or a nonstock corporation, whether a moneyed corporation, a business corporation, or a membership corporation. The terms of the twenty-seventh section of this chapter is general, giving the Supreme Court power to review elections "of any corporation" without any limitation as to its application, and there appears no good reason why the powers of review conferred should not

be exercised to correct an election held by an assessment insurance company, as well as that of a stock corporation. It is also urged that as the twenty-seventh section of the general corporation law requires notice of the application "to the adverse party, or to those to be effected thereby," the provisions of the section are not complied with by notice to the corporation, and to the board claiming to have been elected, but that notice should have been given to the 9,000 policy holders of the company as well. Such a construction would render fruitless the remedies intended to be given by this statute. For, in a great majority of corporations, the stockholders indirectly interested are so large that it would be impracticable, if not impossible, to give notice to all; and, if all are entitled to notice, the hearing could not proceed until each had been given the proper notice. We cannot believe that the Legislature intended the impracticable; and we are of the opinion that notice to the corporation itself and to the members of the board of directors, the legality of whose election is challenged, meets all the requirements of the section. This construction is upheld in the Schoharie Valley Railroad Case, 12 Abb. Prac. (N. S.) 394. Again it is urged that the petitioners are not persons legally aggrieved within the meaning of the twenty-seventh section, and that the proper remedy is to apply to the Attorney General to proceed under section 1948 of the Code. Whatever relief is possible under section 1948, the court also has power to annul an election under section 27 of the general corporation law, and it is not necessary that the Attorney General should proceed under section 1948. Matter of Northern Dispensary, 26 Misc. Rep. 147, 56 N. Y. Supp. 784. The respondents further contend that the petitioners' position is materially defective in that they do not show that a new election would result differently from the one complained of. It is true that where an election is held at a regular time, and under proper authority, and the only question under dispute is as to whether a given director or set of directors have received the necessary votes required to legally elect to office, that in such cases a person attacking an election must show that he has been injured by the declared result, and that but for the illegal exclusion of votes offered, or the reception of votes not entitled to be received, the result of the election would have been different. Ex parte Murphy, 7 Cow. 153; People ex rel. Bush v. Thornton, 25 Hun, 456; In re Long Island R. R. Co., 19 Wend. 37, 32 Am. Dec. 429; Matter of Argus Co., 138 N. Y. 557, 34 N. E. 388; Waterbury v. Merchants' Union Express Co., 50 Barb. 168.

But the case now under consideration is a very different case from any of those above cited. In this case, the right to elect any directors at all is challenged until a proper constitution and by-laws have been adopted, fixing the number of directors who shall manage the affairs of the association, determining the date of the election and providing for other details of management. It is not a question here of who received a majority of the legal votes cast, but a question as to the legal right to hold any election at all. When the question presented is as to the legality of any election at all, then certainly any member of the corporation must of necessity have a standing in court to test the

right to hold an election, and to set aside an election if one is illegally held, no matter what result may have been shown by the ballot. As a matter of fact, it appears that out of a total membership of about 9,000, but about 1,500 votes in all were cast, and most of them by proxy. In any event, it is quite clear to the mind of the court that the petitioners are not required to show in the event of a legal election other directors than those assuming to hold office would be chosen. The petitioners have the right to insist upon a legal and duly authorized election. Neither do we agree with counsel for the respondents that the petitioners are estopped from questioning the election because three notices of the annual meeting of policy holders to be held June 19, 1906, were printed in the official organ of the association known as the "Empire State Degree of Honor Journal." The argument of counsel is that their failure to appear at the meeting at the time named, and raise objections to proceeding with the election, is tantamount to acquiescence, and that the petitioners are therefore estopped from now maintaining this proceeding to set the election aside.

These articles appearing in the Journal are properly speaking no notices at all of any election of directors. No notice is given in them that any directors would be then chosen, or any election had. The most that can be said for these articles that they referred to the annual meeting, and one was a notice of the annual meeting without any intimation that nine directors, or any other number, to manage the affairs of the association, were to be elected. These articles do not rise to the dignity of official notice of an election. But even assuming that they did, I cannot see that the petitioners, or any one else, were required to respect such a notice, or to attend any meeting so called for an election. If a legal election of directors could not be held until their office had been properly provided for by the proper adoption of a proper constitution or code of by-laws for the organization and government of the corporation, then no policy holder was bound to respect a call for such an election prematurely made, and cannot be estopped from questioning such an election by failing to attend and protest. He had the clear right to remain away, and stand on his legal rights. We must now consider briefly the practical effect of the illegal election of June 19th, as bearing on the question of the proper management of the affairs of the association until a legal election can be held.

The re-incorporation of the association under the insurance law of the state did not operate to create a new corporation. Its only effect was to subject the corporate entity to the control and provisions of the insurance law, and to confer upon the association the powers and privileges given by that law. The membership of the association remained unchanged. Its assets became the assets of the new association. The contracts of the old association became the contracts of the new, and the liabilities of the old became the obligations of the new. There was no change in name of the association. The statute under which the reincorporation took place provides for no immediate change in the officers or managing agents. It was the manifest intent of the statute that there should be no change in the corporate entity, but that existing co-operative or assessment societies, by filing the required dec-

laration, might bring themselves under the provisions of the insurance law, and enjoy the benefits and privileges of that act.   Under such circumstances the decisions are so uniform that the reincorporation does not operate to create a new and distinct corporation, but is simply the continuation of the old under a new law.   City National Bank of Poughkeepsie v. Phelps, 97 N. Y. 44, 49 Am. Rep. 513; Matter of Kansas City Smelting Co., 13 App. Div. 50, 43 N. Y. Supp. 51; Metropolitan National Bank v. Claggett, 141 U. S. 521, 12 Sup. Ct. 60, 35 L. Ed. 841.   Atlantic National Bank v. Harris, 118 Mass. 147; Michigan Ins. Bank v. Eldred, 143 U. S. 293, 12 Sup. Ct. 450, 36 L. Ed. 162.

If this be true, then the old officers of the association, nowithstanding the reincorporation, remained the managing officials of the company, and had the right to direct its affairs until their successors were legally chosen.   The by-laws of the association in force prior to the reorganization, in so far as they did not conflict with the provisions of the act under which the association was reincorporated, were of force and effect.   In the event of a failure to hold any election of directors, the so-called executive board of this association was legally authorized to continue to manage the affairs of the association, for section 23 of the general corporation law provides:

"If the directors shall not be elected on the day designated in the by-laws or by-law, the corporation shall not for that reason be dissolved· but every director shall continue to hold his office and discharge his duties until his successor has been elected."

The by-laws in force prior to the reincorporation also provided for the election of the officers who should compose the executive committee, "who shall each hold office for one year and until a successor shall be elected or appointed."   If, on the other hand, there was held an illegal election, such as conferred no legal claim to the office of director upon any one, then the old members of the executive committee should have continued to act, as the managing board, and the pretended election of their successors could not have changed their legal status as the de jure officials of the association.   The court is asked to continue in office the nine directors chosen at the illegal election of June 19th (even though it concludes to set aside such election), until proper by-laws are adopted and directors are legally chosen.   In this suggestion the court cannot concur.   It would be committing the management of the affairs of the association to parties not legally entitled to the same.   The statutes have designated the legal managers until a proper election can be held.   Such managers are the former executive committee of the association.   The election of the respondents on the 19th of June, 1906, must be declared illegal, and the said nine directors ousted from control.   The future management of the affairs of the association should be returned to the former executive committee until a regular election can be held.   The executive committee should proceed forthwith to submit to the members of the association proposed by-laws, and call a meeting for their consideration and adoption, as required by statute in such case made and provided, and immediately thereafter call a special meeting of the members of the association for the election

of directors in accordance with the provisions of such by-laws when so duly adopted.

Let such an order be drawn and settled upon five days' notice to the attorneys of the respondents.