Morris Eder, J.
Petitioner, a director and stockholder of R. Hoe & Co., Inc., has instituted a proceeding pursuant to the provisions of section 25 of the General Corporation Law and article 78 of the Civil Practice Act, to invalidate the election of certain named directors of the corporation on the ground that their election was obtained by means of a proxy solicitation campaign which disseminated false charges among the stockholders.
Section 25 of the General Corporation Law provides that “Upon the application of any member aggrieved by an election * * * the supreme court at a special term thereof shall forthwith hear the proofs and allegations of the parties, and confirm the election or order a new election, as justice may require ’ ’.
The board of directors of the corporation consists of 11 persons. At the challenged election held at the annual meeting on April 13, 1954, the five seats to be filled by vote of the stockholders were won by the directors for whom proxies were solicited by the “Stockholders Protective Committee ” by securing over 70% of the total vote. At a meeting 10 days later three of the remaining six directors resigned and the board thereupon elected three persons to the vacant positions. These eight new directors have been named with the corporation as respondents.
*502 Petitioner had been up to the time of the challenged election chairman of the board and general counsel of the corporation and head of ‘ ‘ Management ’ ’ as then constituted. It was ‘ ‘ Management’s ” slate of directors which was defeated by the “ Committee’s ” slate at the annual election. Petitioner’s office as director was not up for election at this time and he continued to attend board meetings and participate therein as a director, receiving $100 for each of five subsequent meetings. He commenced this proceeding on July 22,1954, more than three months after the challenged election.
Petitioner has set forth in an exhibit the improprieties in respondents’ proxy material of which he complains. The allegedly fraudulent misstatements and concealments were originally made by the Stockholders Protective Committee organized when the board discharged the president of the corporation in soliciting proxies to compel the holding of a special stockholders’ meeting prior to the annual meeting of April 13, 1954, to pass on charges for removal of four of “Management’s” directors, including petitioner. ‘ ‘ Management ” countered with proxy material of its own answering these charges and counterattacking with accusations against the Committee and the authors of the charges. In October, 1953, the Committee, having proxies from over 55% of the stock entitled to vote, requested the special meeting. Upon refusal the Committee applied for an order under article 78 of the Civil Practice Act directing the new president of the corporation to call the special meeting. The order of Special Term granting the application was affirmed by the Appellate Division and by the Court of Appeals (Matter of Auer v. Dressel, 282 App. Div. 1039, affd. 306 N. Y. 427). It was now March 12, 1954, only about one month before the annual meeting in April, and the Committee determined to obtain proxies for that election of five directors. It accordingly requested that the order affirmed direct the special meeting to be held subsequent to the annual meeting, which was so provided. Petitioner later successfully moved to strike from that order such provision on the ground that the original proxies were obtained for the holding of a special meeting prior to the annual election and could not be used for such a meeting to be held subsequent to the annual meeting.
In the meantime, beginning with March 8, 1954, the Committee issued material to solicit proxies for the annual meeting. The original charges were referred to only incidentally in such material. None of the four directors whose removal had been sought and against whom the allegedly “false” *503 charges were made in the campaign for a special election was a candidate for election at the annual meeting. The new proxy material did, however, directly state that a vote for the Committee’s side would help to destroy “ Cullomism ” and dismiss Cullom (petitioner) “from his jobs in Hoe”. There can be no doubt that the new material was intended to convey to stockholders the identification of “ Management’s ” slate of five proposed directors to be elected at the annual meeting with petitioner and the three incumbent directors against whom the charges had been originally made in connection with the proposed special meeting. For practical purposes the new material may simply be deemed a continuation of the old proxy material though directed towards a different result and against other representatives of the same “Management” group.
“ Management ” also solicited proxies for the annual meeting and sent out considerable material of its own.
The charges originally made which are alleged to be false are substantially as follows: That one of the four accused directors proposed, and the other three agreed, that the then president of the corporation be paid a sum of money to resign upon condition that he take no action against any of the directors or officers; that petitioner as counsel wrongfully charged the corporation for office space rental for a limited period; that he engaged a personal friend in connection with certain corporate proceedings without specific authority of the board. Petitioner also claims that the Committee misrepresented to stockholders the cost (to be later paid by the corporation) of its proxy fight. He also charges that in violation of the Securities and Exchange Act the Committee failed to clear with the Securities and Exchange Commission one letter and two reports issued to stockholders (all of the other material was so cleared). In addition, he has set forth various miscellaneous misstatements and concealments in the Committee’s material which were aimed directly at him as the ‘ ‘ one-man ’ ’ management of the corporation.
Respondents have in their answer denied the “ averment that 1 their election was secured in the fraudulent manner set forth ’ in Exhibit A to the petition ’ ’. They have not at this time made a point-by-point response to each of the charges appearing in said exhibit. Although maintaining that each of the statements contained in the Committee’s proxy material had some foundation in fact, their present opposition to petitioner’s application is based on their belief that he has failed to state facts sufficient to entitle him to relief.
*504 They first raise the objection that the alleged falsity of proxy material pertaining to the proposed special meeting cannot be asserted to declare invalid the election held at an entirely different meeting and involving other persons. As already indicated, however, it is the view of the court that all of such material for the annual as well as the special meeting, was directed to the “ Management’s ” representatives rather than the individuals composing it, was issued in a continuous stream, and was intended to have stockholders sign “ Committee ” proxies for the annual meeting for the reasons previously urged against ‘ ‘ Management ’ ’ with regard to the suggested special meeting and now restated in somewhat different form.
Respondents also urge that petitioner is not “ a member aggrieved by an election ”. They point to the fact that no other stockholder is claimed to have been deceived or misled by the proxy material, and that surely petitioner does not claim that he personally was deceived. In effect, they maintain that he is simply a disappointed leader of the opposition. In addition, they maintain that his failure to challenge the election prior thereto, at the time of the election, or immediately thereafter, at all of which times he knew all the facts alleged in the present proceeding, and his subsequent participation in directors’ meetings and acceptance of fees therefor, constitute inexcusable laches and thus bar the proceeding.
Petitioner’s answer to this contention is that he is an aggrieved member, being a stockholder and a director, and a member of “ Management’s ” group whose slate was defeated at the challenged election. In addition to claiming he is not guilty of laches, he points out that the proceeding was timely commenced within the four-month statute (Civ. Prac. Act, § 1286).
I am inclined to the view that petitioner is not barred from maintaining this proceeding. Although an “ aggrieved member ” may institute it, it is actually intended for the benefit of the stockholders as a whole. Accordingly, the term “ an aggrieved member ” should not be strictly construed. Any stockholder or director may bring such proceeding, he being naturally affected in some way by an unfair or irregular election. Similarly, the defense of laches should not be favored to bar a proceeding for which the Legislature has already provided an extremely short Statute of Limitations. Petitioner’s subsequent participation in board meetings was in performance of duties he owed the corporation and do not bar him from commencing this proceeding before the expiration of the time limited by law.
*505 However, considering the application on its merits, after a careful review of the papers submitted by both sides including the book of exhibits of all the proxy material issued by the “ Committee ” and the “ Management ”, I have concluded that petitioner has failed to present a case for invoking the equitable power of the Supreme Court to set aside a corporate election regularly held and conducted. This was a bitterly fought proxy battle with each side busily engaged in issuing extensive material containing charges and countercharges. “ Management ” had printed and delivered to all stockholders, in addition to numerous letters and reports, a 21-page brochure entitled “ Record — Detailed and Documented Answer of Management to the ‘ Protective ’ Committee’s Accusations”. It appears from petitioner’s own account of the transactions involved in the allegedly false material complained of that some foundation in fact existed for at least a portion of each of the charges made, that they were not complete fabrications. Certainly “ Management ” fully availed itself of the opportunity to present to stockholders its side of the controversy surrounding these charges. A certain amount of innuendo, misstatement, exaggeration and puffing must be allowed as a natural by-product of a bitter campaign. The stockholders had ample time to weigh the statements and arguments of both sides and no substantial reason appears for setting aside their 70% vote in favor of respondents.
Even assuming there were misstatements or concealments, the election may not be set aside unless the court concludes further that the result would have been different had no such improprieties been injected into the proxy campaign, or that an inequitable result has been thereby produced (Matter of Green Bus Lines [Turner], 166 Misc. 800). Of course, it is not necessary to show that a substantial number of stockholders was actually deceived into voting against “ Management ”; petitioner is entitled to the court’s interposition upon a reasonable showing that they might have been. In my opinion the record as a whole does not disclose either that the solicitation was so tainted with fraud as to require a holding that an inequitable result was accomplished, or that the claimed misstatements and nondisclosures were of such a nature that one may reasonably conclude that they must have affected such substantial number of stockholders as to alter the probable result of the election. A court should not interfere in the internal affairs of a corporation unless a clear showing is made to warrant such action.
*506 It appears that there are only two reported cases in this State where corporate elections have been set aside because of fraudulent material issued in a proxy campaign.
Matter of Scheuer (59 N. Y. S. 2d 500) involved an election where the victors received about 55% of the vote. The court found that they had falsely written to stockholders when soliciting their proxies that the substantial reduction in net earnings, of which the opposition complained, was due to the cost of improvements and new equipment being deducted from gross earnings, when the fact known to them was that such cost had been charged to capital and not earnings. The court also found that they had not informed stockholders that a brokerage firm whose praise of the victors was circulated widely had received compensation therefor. In view of the close result and the nature of the fraud and concealment disclosed, the election was set aside.
In Matter of Wyatt v. Armstrong (186 Misc. 216), also decided by Mr. Justice Hobstadteb, some of the successful nominees for whom proxies had been solicited had submitted resignations in advance of the election. This concealment of the real powers for whom the stockholders’ vote was being used was held to be 11 reprehensible in the extreme” and a clear fraud practiced on the stockholders ‘ ‘ for the purpose of handing over the control of the corporation to others than those named as the nominees for the directorships involved” (p. 219).
The type of gross fraud and concealment present in those cases is absent in the proxy solicitations here shown. Stockholders were adequately furnished both versions of the alleged misstatements and then voted overwhelmingly for the Committee’s slate. This was a strenuous and heated proxy battle full of charges and recriminations, but not so tainted with fraud as to justify interference by the courts.
The violation of law complained of by petitioner with regard to the failure to clear with the Securities and Exchange Commission three items which were given only to workers soliciting proxies and not issued to the stockholders, and which the workers may have used in discussions with more than 10 stockholders (S. E. C. Rules, rule X; Code of Fed. Reg., tit. 17, § 240.14a-6, subd. [d]), is not deemed substantial nor cognizable as a basis for granting the relief requested. Exclusive jurisdiction to grant a remedy for a violation of the Securities Exchange Act is in the Federal courts. The “ Committee ” did in fact clear all the other material with the Securities and Exchange Commission and this inadvertence may be deemed to be merely a technical violation. In any event, petition may not be here *507 granted simply because respondents failed to clear material as required but only upon a showing- that said material contained fraudulent charges which must be deemed to have misled stockholders and substantially affected the election results.
The application is accordingly denied.