In re JOHN HICKS CHRYSLER–PLYMOUTH, INC., Debtor.

**Bankruptcy No. 92–14497.**

United States Bankruptcy Court, E.D. Tennessee.

Nov. 25, 1992.

John W. Beard, Patrick, Beard & Richardson, Chattanooga, TN, for Douglas R. Johnson, Trustee in Bankruptcy.

Scott N. Brown, Jr., Brown, Dobson, Burnette & Kesler, Chattanooga, TN, for Scott N. Brown, Jr., Trustee in Bankruptcy.

Arthur C. Grisham, Jr., Grisham & Knight, Chattanooga, TN, for Chrysler Credit Corp.

James F.B. Daniels, Berman, DeLeve, Kuchan & Chapman, Kansas City, MO, and Richard B. Gossett, Heiskell, Donelson, Bearman, Adams, Williams & Kirsch, Chattanooga, TN, for Chrysler Corp.

### MEMORANDUM

RALPH H. KELLEY, Chief Judge.

The bankruptcy trustee in the case of John Hicks Chrysler–Plymouth, Inc., seeks to sell its dealership or "blue-sky" rights. Chrysler Credit Corporation is a creditor of Hicks Chrysler–Plymouth. Chrysler Credit has objected to the proposed sale and filed a motion to dismiss the bankruptcy case.

If the bankruptcy case is dismissed, the objection to the sale will be moot. The court will first decide whether the bankruptcy case must be dismissed. The following facts are taken from stipulations filed by the parties and the exhibits.

In September, 1990, John H. Hicks was the sole shareholder in a corporation known as John Hicks Imports. Mr. Hicks was the sole director and officer of Hicks Imports.

Hicks Imports in turn owned all the stock in John Hicks Chrysler–Plymouth. Hicks Imports had been issued the one and only stock certificate for 500 shares in Hicks Chrysler–Plymouth. The stock ledger of Hicks Chrysler–Plymouth showed Hicks Imports as the only stockholder.

Chrysler Credit provided inventory financing and other financial services for Hicks Chrysler–Plymouth. As a result, Chrysler Credit acquired a security interest in all the assets of Hicks Chrysler–Plymouth.

Chrysler Credit also required Mr. Hicks to guarantee all the debts owed to it by Hicks Chrysler–Plymouth.

In September, 1990, Chrysler Credit made a loan to Hicks Chrysler–Plymouth. As security for the loan, Hicks Imports pledged to Chrysler Credit all the stock in Hicks Chrysler–Plymouth. Hicks Imports delivered the stock certificate to Chrysler Credit. Chrysler Credit has kept the stock certificate in its possession at all times after receiving it.

The security agreement irrevocably appointed any vice president of Chrysler Credit as its attorney to transfer the stock on the books of Hicks Chrysler–Plymouth. However, the stock was not transferred on the books of Hicks Chrysler–Plymouth before its bankruptcy.

The security agreement irrevocably appointed any vice president of Chrysler Credit as its proxy to vote the stock at any shareholders' meetings. The irrevocable proxy appointment is not in type that is darker, larger, or any different from the type used for the other provisions of the security agreement.

At the same time as the pledge, Hicks Imports executed an assignment of the stock in Hicks Chrysler–Plymouth. The assignment provides that Hicks Imports "sells, assigns and transfers" the stock to Chrysler Credit. It also irrevocably appoints R.E. Baker as attorney to have the stock transferred on the books of Hicks Chrysler–Plymouth. The assignment is signed by John Hicks as president of Hicks Imports on its behalf.

After the stock was pledged, Hicks Imports voted the stock in Hicks Chrysler–Plymouth. The voting was done by written consent without a stockholders' meeting.

In one vote, Hicks Imports and Hicks Chrysler–Plymouth agreed to the refinancing of a note; the refinancing released them and substituted John Hicks Oldsmobile–GMC, Inc., as the debtor. The note was not to Chrysler Credit.

In the other vote, Hicks Imports and Hicks Chrysler–Plymouth accepted the resignation of the corporate secretary of

Hicks Chrysler–Plymouth and agreed that Mr. Hicks would serve as secretary thereafter.

In April, May, and June, 1992, Chrysler Credit and Mr. Hicks discussed the financial condition of Hicks Chrysler–Plymouth. The discussions came about because the dealership's working capital had fallen below the minimum required by Chrysler Credit.

On May 12, 1992, creditors filed an involuntary bankruptcy petition against Mr. Hicks. On June 2, 1992, Mr. Hicks filed an answer contesting the involuntary petition.

The discussions between Mr. Hicks and Chrysler Credit led to more capital being put into Hicks Chrysler–Plymouth. The new capital brought the dealership up to Chrysler Credit's minimum requirements, but Chrysler Credit agreed only to continue financing for a time to see if the dealership's capital condition would improve.

The dealership made modest profits in May, June, and July, 1992, but suffered a significant loss in August. The losses continued into September. On September 18, 1992, Chrysler Credit sent a letter to Hicks Chrysler–Plymouth giving notice that it had defaulted and that the default could be cured only by a capital infusion of $268,-000.

On September 22, 1992, Mr. Hicks sent a letter to Chrysler Corporation (Chrysler Motors) surrendering all the rights of Hicks Chrysler–Plymouth under the dealership agreements. The letter waived any waiting periods or time requirements that might prevent Chrysler from awarding a new dealership in the area as soon as possible.

On the same day, September 22, 1992, Mr. Hicks sent Chrysler Credit a letter from Hicks Chrysler–Plymouth and Hicks Imports. The letter begins:

> The undersigned, constituting a quorum of the Board of Directors of John Hicks Chrysler–Plymouth, Inc. ... "Borrower" ... and being the owners of one hundred percent (100%) of Borrower's issued and outstanding common stock, do hereby acknowledge that the financial affairs of the corporation are such that it can no longer continue its present operations as an authorized Chrysler Plymouth dealer. . . .

The letter is signed by Mr. Hicks on behalf of both Hicks Chrysler–Plymouth and Hicks Imports.

The letter surrendered the machinery, equipment, fixtures, furniture, tools, supplies, parts, and accessories and requested that Chrysler Credit take possession. The letter authorized Chrysler Credit:

> (1) to collect all notes, contract rights, accounts receivable, and accounts that Hicks Chrysler–Plymouth had assigned to Chrysler Credit;
>
> (2) to collect money due from financial institutions that had bought retail installment contracts from Hicks Chrysler–Plymouth; and
>
> (3) to collect any money due to Hicks Chrysler–Plymouth from Chrysler Motors.

Three days later, on September 25, 1992, Chrysler Corporation sent a letter accepting the surrender of the dealership agreements and waiving the requirement that dealers give at least 30 days notice of surrender.

The trial of the involuntary petition against Mr. Hicks was set for the same day, September 25, 1992. At that time Mr. Hicks' dropped his opposition to the involuntary petition. As a result, the court entered an order for relief. The U.S. Trustee appointed Douglas R. Johnson as bankruptcy trustee.

On October 12, 1992, Mr. Johnson voted Mr. Hicks' stock in Hicks Imports. Mr. Johnson elected himself sole director of Hicks Imports. Mr. Johnson took this action by written consent without a stockholders' meeting.

Also on October 12, 1992, Mr. Johnson, as sole director of Hicks Imports, voted its stock in Hicks Chrysler–Plymouth to elect himself sole director of Hicks Chrysler–Plymouth. Then, as sole director of Hicks Chrysler–Plymouth, Mr. Johnson adopted a resolution authorizing Hicks Chrysler–Plymouth to file a bankruptcy case. Mr.

Johnson took these actions by written consent without a stockholders' meeting.

Mr. Johnson did not give notice to Chrysler Credit before he voted Hicks Imports' stock in Hicks Chrysler–Plymouth to elect himself sole director of Hicks Chrysler–Plymouth. He also did not give Chrysler Credit notice before he voted as sole director of Hicks Chrysler–Plymouth to put it into bankruptcy.

At the time of these votes, the stock was pledged to Chrysler Credit, and the stock certificate was in its possession. The stock register of Hicks Chrysler–Plymouth still showed Hicks Imports as the owner.

When he voted, Mr. Johnson did not know the terms of the stock pledge or the stock assignment or the surrender letters (dated September 22, 1992) from Hicks Chrysler–Plymouth to Chrysler Credit and Chrysler Motors. Mr. Johnson knew that Mr. Hicks' deposition had been taken on June 12, 1992. In the deposition, Mr. Hicks testified that Hicks Imports' stock in Hicks Chrysler–Plymouth had been pledged to Chrysler Credit.

On October 13, 1992, Hicks Chrysler–Plymouth filed a voluntary bankruptcy petition for liquidation under Chapter 7 of the Bankruptcy Code. Scott N. Brown, Jr. was appointed bankruptcy trustee.

Between September 22, 1992, when Hicks Chrysler–Plymouth surrendered its dealership rights, and October 12, 1992, when Mr. Johnson voted to put Hicks Chrysler–Plymouth into bankruptcy, Prebul Jeep–Eagle, Inc., applied to Chrysler Motors for the local Chrysler–Plymouth dealership. Since Prebul was already selling the Jeep and Eagle lines of Chrysler products, Chrysler Motors advised Prebul that the application would be processed quickly and that approval was likely.

Anticipating that the dealership would be awarded around mid-October, 1992, Prebul hired twelve to fifteen former employees of Hicks Chrysler–Plymouth and agreed to buy some of the assets if the dealership was awarded to it.

Mr. Brown, as trustee for Hicks Chrysler–Plymouth, has filed a complaint against Chrysler Credit and Chrysler Motors. Among other things, the complaint alleges that the surrender of the dealership was a preferential or fraudulent transfer.

Chrysler Credit's main argument is that the bankruptcy petition filed by Hicks Chrysler–Plymouth was not properly authorized. Mr. Johnson, as the bankruptcy trustee in Mr. Hicks' case, voted Mr. Hicks' stock to make himself the sole director of Hicks Imports. Chrysler Credit argues that Mr. Johnson, as sole director of Hicks Imports, could not vote its stock in Hicks Chrysler–Plymouth to elect himself its sole director.

The question is whether anyone, as sole director of Hicks Imports, could have voted its stock in Hicks Chrysler–Plymouth to elect himself sole director of Hicks Chrysler–Plymouth.

■ Hicks Imports had pledged its stock in Hicks Chrysler–Plymouth to Chrysler Credit, and Chrysler Credit had possession of the stock certificate. The pledge did not make Chrysler Credit the owner of the stock; Hicks Imports remained the owner. *Trimble v. Sonitrol of Memphis, Inc.*, 723 S.W.2d 633, 3 U.C.C.Rep.Serv.2d 1259 (Tenn.App.1986); *see also In re Consolidated Auto Recyclers, Inc.*, 123 B.R. 130, 21 Bankr.Ct.Dec. 443 (Bankr.D.Me.1991); *Goldfield Corp. v. General Host Corp.*, 277 N.E.2d 387, 327 N.Y.S.2d 330, 29 N.Y.2d 264 (1971). The right to vote stock in a corporation goes with the ownership of the stock. *Swaim v. Martin*, 302 Ky. 381, 194 S.W.2d 855 (1946); *In re Giant Portland Cement Co.*, 26 Del.Ch. 32, 21 A.2d 697 (1941). As a result, the pledge of the stock did not take away the right of Hicks Imports to vote the stock.

The separate assignment of the stock is worded as an absolute transfer, but it was clearly intended only to make sure that the pledge was effective. None of the parties intended to make Chrysler Credit the owner of the stock at the time of the pledge. The assignment did not make Chrysler Credit the owner of the stock and take away the right of Hicks Imports to vote.

*In re Windham Power Lifts, Inc.*, 91 B.R. 595 (Bankr.M.D.Ala.1988).

Chrysler Credit argues that it became the owner of the stock when Hicks Chrysler–Plymouth surrendered the collateral to Chrysler Credit on September 22, 1992. Hicks Imports joined in the surrender letter from Hicks Chrysler–Plymouth, but the letter said absolutely nothing about surrendering the stock. It mentioned several kinds of collateral but not the stock.

The very beginning of the letter disagrees with the argument that Hicks Imports meant to surrender the stock or make Chrysler Credit the owner. The first paragraph says that Hicks Imports, *as the sole shareholder of Hicks Chrysler–Plymouth,* joins in the surrender of the collateral.

Even if Hicks Imports had surrendered the stock to Chrysler Credit, that would not have made Chrysler Credit the owner. A surrender of collateral is not a foreclosure. Chrysler Credit could have become owner of the pledged stock by buying it at a foreclosure sale or by a strict foreclosure, but it did not foreclose before the trustee voted the stock to make himself the sole director of Hicks Chrysler–Plymouth. TENN.CODE ANN. §§ 47–9–297, 47–9–501, 47–9–504 & 47–9–505 (1992); *Goldfield Corp. v. General Host Corp.,* 277 N.E.2d 387, 327 N.Y.S.2d 330, 29 N.Y.2d 264 (N.Y.1971).

In summary, neither the pledge nor the surrender of collateral deprived Hicks Imports of its ownership of the stock in Hicks Chrysler–Plymouth. Chrysler Credit argues that, even if Hicks Imports was still the owner of the stock, it did not have the right to vote the stock. According to Chrysler Credit, Hicks Imports had given up the right to vote the stock by appointing Chrysler Credit as its proxy to vote the stock.

■ The Tennessee law on the appointment of a proxy provides:

(a) A shareholder may vote his shares in person or by proxy.

(b) A shareholder may appoint a proxy to vote or otherwise act for him by signing an appointment form....

(c) An appointment of a proxy is effective when received by the secretary or other agent authorized to tabulate votes. An appointment is valid for eleven (11) months unless another period is expressly provided in the appointment form.

(d) An appointment of a proxy is revocable by the shareholder unless the appointment form conspicuously states that it is irrevocable and the appointment is coupled with an interest. Appointments coupled with an interest include the appointment of:

(1) A pledgee;

. . . .

TENN.CODE ANN. § 48–17–203 (1988).

Chrysler Credit seems to be arguing that an irrevocable proxy transfers the right to vote from the shareholder to the proxy, so that the shareholder can no longer vote the stock.

■ If a proxy appointment is revocable, the shareholder can revoke the proxy simply by voting the stock itself. The shareholder's vote, not the proxy's vote, counts. *Johnson v. Spartanburg County Fair Ass'n,* 210 S.C. 56, 41 S.E.2d 599 (1947); J.E. Macy, Annotation, *Revocability of Proxy to Vote Stock,* 159 A.L.R. 307, 308 (1945).

■ But suppose the proxy appointment is irrevocable. Does the proxy's right to vote exclude the shareholder from voting? A proxy can be irrevocable only if it is coupled with an interest. "Coupled with an interest" basically means that the proxy has an interest in the stock that justifies the proxy in voting the stock for its own benefit and against the shareholder's interest. TENN.CODE ANN. § 48–17–203(d) (1988). The law seems to be that the shareholder cannot vote its stock when it has made an irrevocable proxy appointment. *Compare Mobile & O.R. Co. v. Nicholas,* 98 Ala. 92, 12 So. 723 (1893), and *Hey v. Dolphin,* 36 N.Y.S. 627 (Sup.Ct. 1895), *with Smith v. San Francisco & N.P. Ry. Co.,* 115 Cal. 584, 47 P. 582 (1897), and

*In re Chilson,* 19 Del.Ch. 398, 168 A. 82 (1933).[1]

In this regard, Tennessee does not have a statute that allows a proxy's vote to count only if the stock has been transferred to the proxy's name on the corporation's books. The Tennessee statute sets up a system for the corporation to follow in accepting or rejecting votes, but the courts have the final say on who was entitled to vote according to other legal rules. TENN. CODE ANN. § 48–17–203(h) & § 48–17–205(e) (1988); *see also In re Giant Portland Cement Co.,* 21 A.2d 697 (Del.Ch.1941)

The question, then, is whether the appointment of Chrysler Credit as proxy was revocable or irrevocable. Since Chrysler Credit was a pledgee of the stock and the debt had not been paid, the appointment was coupled with an interest. It could have been irrevocable. TENN.CODE ANN. § 48–17–203(d), (f) (1988).

The Tennessee statute, however, imposes another requirement to make a proxy appointment irrevocable. The appointment form must conspicuously state that the appointment is irrevocable. TENN.CODE ANN. § 48–17–203(d) (1988).

> "Conspicuous" means so written that a reasonable person against whom the writing is to operate should have noticed it. For example, printing in italics or boldface or contrasting color, or typing in capitals or underlined is conspicuous....

TENN.CODE ANN. § 48–11–201(4) (1988).

The security agreement does not in any way make the proxy appointment conspicuous. As a result, the appointment of Chrysler Credit cannot be enforced as irrevocable; the proxy was revocable. *Cf. Ford Motor Co. v. Moulton,* 511 S.W.2d 690, 14 U.C.C.Rep.Serv. 312 (Tenn.1974); *Board of Directors v. Southwest Petroleum Corp.,* 757 S.W.2d 669, 7 U.C.C.Rep. Serv.2d 386 (Tenn.App.1988).[2] This means that Hicks Imports could revoke the proxy

and vote the stock itself simply by voting the stock as the trustee did.

▪ Next Chrysler Credit argues that the trustee could not vote the stock to elect himself the sole director of Hicks Chrysler–Plymouth without first giving notice to Chrysler Credit.

The Tennessee statutes did not require notice to Chrysler Credit. Notice must be given to the registered owner of the stock. The stock had not been transferred on the books of Hicks Chrysler–Plymouth from Hicks Imports to Chrysler Credit. Hicks Imports, not Chrysler Credit, was the registered owner at the time of the vote. TENN.CODE ANN. §§ 48–17–104, –105, –107 & –201 (1988).

▪ However, Chrysler Credit's argument seems to be aimed at the good faith of the trustee or Hicks Chrysler–Plymouth. The trustee did not know the terms of the pledge and the proxy. The trustee may have heard Mr. Hicks testify that the stock in Hicks Chrysler–Plymouth was pledged to Chrysler Credit. The stipulated facts are not clear on this point. They say that the trustee knew of the Mr. Hicks' deposition; they do not say that the trustee was present or knew what Mr. Hicks said.

In any event, Hicks Imports certainly knew of the pledge and the proxy to Chrysler Credit. The court can assume, for the purpose of argument, that the bankruptcy trustee knew of the pledge and the proxy since he was acting as sole director of Hicks Imports on its behalf.

The court's earlier conclusions require it to reject Chrysler Credit's argument. The pledge did not make Chrysler Credit the owner of the stock with the right to vote. Chrysler Credit did not become the owner by foreclosure. Furthermore, the proxy to Chrysler Credit was revocable as a result of failure to follow the statute. If the trustee had given Chrysler Credit notice, it

---

**1.** These cases are found in J.E. Macy, Annotation, *Revocability of Proxy to Vote Stock,* 159 A.L.R. 307 (1945).

**2.** The eleven-month limit on the validity of a proxy appointment surely applies to a revocable proxy, which means that the appointment of Chrysler Credit may have expired before the trustee's vote. TENN.CODE ANN. § 48–17–203(c) (1988).

would not have made any difference. Between Hicks Imports as owner of the stock and Chrysler Credit as holder of a revocable proxy, the vote by Hicks Imports would have controlled. Even if Chrysler Credit had notice, Hicks Imports would still have elected the bankruptcy trustee as sole director of Hicks Chrysler–Plymouth.

The same reasoning answers any argument Chrysler Credit might have for notice from the trustee before he voted as sole director of Hicks Chrysler–Plymouth to put it into bankruptcy.

■ In another case, the bankruptcy trustee of a parent corporation voted its stock in a subsidiary to elect himself the sole director and then put the subsidiary into bankruptcy. The court held that the trustee's voting of the stock amounted to using property of the bankruptcy estate outside the ordinary course of business, and Bankruptcy Code § 363 required the trustee to give notice before voting the stock. 11 U.S.C.A. § 363(b) (West Supp. 1992). *In re Consolidated Auto Recyclers, Inc.*, 123 B.R. 130, 21 Bankr.Ct.Dec. 443 (Bankr.D.Me.1991).

This reasoning does not seem to apply to the facts of this case. The stock of Hicks Imports in Hicks Chrysler–Plymouth was not property of the bankruptcy estate in Mr. Hicks' case. Furthermore, for reasons already explained, the court does not see how it would have made any difference if the trustee had given notice to Chrysler Credit.

Likewise, the trustee might have given notice to Chrysler Credit that he intended to vote Mr. Hicks' stock in Hicks Imports to elect himself its sole director. The court is assuming that Chrysler Credit would have received notice as a creditor of Mr. Hicks. But the notice would not have made any difference. Chrysler Credit could not have changed the result.

■ The court need not decide in this case but should point out another possible problem with Chrysler Credit's motion to dismiss. The courts do not favor a creditor's motion to dismiss a corporate bankruptcy on the ground that the filing was not properly authorized by the directors. The creditor may not be trying to protect the rights of shareholders. It may only be trying to protect transfers to it that the bankruptcy trustee might recover for the benefit of all the corporation's creditors. *Chicago Bank of Commerce v. Carter,* 61 F.2d 986 (8th Cir.1932); *In re Fox West Coast Theatres,* 25 F.Supp. 250 (S.D.Cal. 1936), *aff'd,* 88 F.2d 212 (9th Cir.1937), *cert. den., Talley v. Fox Films Corp.,* 301 U.S. 710, 57 S.Ct. 944, 81 L.Ed. 1363 (1937), *reh. den.,* 302 U.S. 772, 58 S.Ct. 7, 82 L.Ed. 598 (1937); *In re Autumn Press, Inc.,* 20 B.R. 60 (Bankr.D.Mass.1982); *In re Professional Success Seminars, Intern., Inc.,* 18 B.R. 75 (Bankr.S.D.Fla.1982). The bare facts now before the court are enough to raise the court's suspicions. Hicks Chrysler–Plymouth surrendered the dealership three days before Mr. Hicks quit contesting the involuntary bankruptcy petition filed against him. However, the court cannot decide on these bare facts whether Chrysler Credit's motion to dismiss should be denied on this ground.

The court concludes that the bankruptcy case of Hicks Chrysler–Plymouth was properly authorized.

■ The next question is whether the bankruptcy trustee for Hicks Chrysler–Plymouth can go ahead with the proposed sale of its dealership or "blue-sky" rights. Without rendering a final decision on the point, the court can say that the dealership seems to have been terminated before Hicks Chrysler–Plymouth filed its bankruptcy petition. As a result, it appears that the trustee does not have anything to sell at this point. In the separate adversary proceeding, the trustee may be able to set aside the termination of the dealership so that he will have something to sell. Until then, the court is justified in holding that the trustee's proposed sale cannot proceed.

The court will enter an order accordingly.

This memorandum constitutes the court's findings of fact and conclusions of law. Fed.R.Bankr.Proc. 7052 (West 1984).

## Order

In accordance with the court's memorandum opinion entered this date, the motion of Chrysler Credit Corporation to dismiss this bankruptcy case is denied, but the bankruptcy trustee's proposed sale of the debtor's "blue-sky" rights is cancelled pending further action of the court.

IT IS SO ORDERED.